17225

MRS. BETTY BUTLER of the Department of Public Welfare, Respondent, v. MRS. MARGARET WHITT, Carolyn Whitt, Infant under Fourteen Years of Age, CLYDE E. JARRETT and MRS. CLYDE E. JARRETT, Appellants.

(95 S. E. (2d) 496)

*L. K. Leonard, Esq.,* of Spartanburg, *for Appellants,*

*Messrs. T. C. Callison, Attorney General,* and *Daniel R. McLeod, Assistant Attorney General,* of Columbia, *for Respondent,*

November 28, 1956.

OXNER, Justice.

This controversy relates to the custody of Carolyn Whitt, who is now approximately eight year of age.

On June 9, 1952, Mrs. Betty Butler, a case worker in the Department of Public Welfare, filed a petition in the Children's Court of Spartanburg County in which she alleged that the above minor had been given by her mother to Mr. and Mrs. Clyde E. Jarrett who had turned her over to the Department of Public Welfare, and that she was now "dependent". The Court was requested to assume custody pending an investigation and hearing. The Children's Court did so and placed the child in a foster home under the care of the Department of Public Welfare. The petition and summons were duly served upon the child and her mother, Margaret Whitt. On June 23, 1952, Mr. and Mrs. Jarrett were made parties defendant.

A guardian *ad litem* was appointed for the child. The mother filed an answer in which she denied that her daughter was dependent or homeless, and alleged that she had been delivered to the Jarretts under an agreement that the latter would take care of, maintain and support her during her minority and would take the necessary steps for adoption, and that pursuant to this agreement, she deeded the child to the Jarretts on June 12, 1952. The Jarretts also denied in their answer that the child was dependent or homeless and stated that under the agreement made with the mother they were charged with the responsibility of supporting her. They further alleged that the child was temporarily turned over to the petitioner, a welfare worker, who promised to return her in a day or two but refused to do so and delivered her to the Department of Public Welfare.

A hearing was duly had in the Children's Court, after which an order was filed on August 23, 1952, wherein the Court refused to deliver the custody of the child to either the mother or the Jarretts and continued jurisdiction. This order was sustained by the resident Judge of the Court of Common Pleas on March 13, 1956. The case is here on appeal by the mother and the Jarretts.

The parents of the child have been separated for a number of years. For a short period prior to June, 1951, the

mother received assistance from the Department of Public Welfare. It was during this time that the welfare worker first came in contact with the home. Finally the mother secured employment and the welfare payments ceased. Around September, 1951, at the solicitation of the Jarretts, the mother placed the child in their custody. She had previously given away two children.

The mother testified that she visited the Jarrett home quite frequently, found the child happy and well taken care of, and that she was entirely satisfied with her placement in the Jarrett home. It appears that the Jarretts have no children. Both said the child was happy, they were very fond of her, and were financially able to rear her without assistance from the welfare department. They claimed that they were annoyed by frequent visits from the welfare worker and finally had to request that she discontinue coming to their home. They admitted, however, that during the latter part of May or early June, 1952, they sought the advice of the welfare department as a result of which petitioner came to their home and asked to take the child for a few hours in order to get acquainted with her. They said they permitted her to do so but instead of returning the child, petitioner placed her in a foster home.

Appellants offered several witnesses who expressed the opinion that the Jarrett home was an entirely suitable one for the child. It seems to be admitted, however, that Mrs. Jarrett is extremely nervous and suffers from "tension headaches", which her physician said were caused by certain repulsive conduct on the part of her father and brothers when she was a young girl. For some time she was under the care of a psychiatrist. It is also conceded that on account of certain behavior and habits, the child on one occasion was taken to a mental clinic.

Respondent, who is employed by the Department of Public Welfare, testified that she visited the Jarrett home quite frequently in an effort to solve various problems connected with the child; that at times the Jarretts were uncertain

whether it would be wise for them to keep her; that on one occasion Mr. Jarrett said that the child was making his wife very nervous and requested that she be placed elsewhere but after talking to Mrs. Jarrett, they decided to keep her; that finally on June 5, 1952, Mr. Jarrett telephoned that they had definitely decided to surrender the child and asked respondent to come and get her; and that pursuant to this request, the child, with the consent of both Mr. and Mrs. Jarrett, was removed from the home. It was the opinion of respondent that the Jarrett home was not a satisfactory place for the child. She said that the stay in this home made the child extremely nervous and that she improved considerably soon after being removed and placed elsewhere.

We shall first discuss the exceptions challenging the jurisdiction of the Children's Court of Spartanburg County to hear the case. Appellants contend that the Court was without jurisdiction because "the testimony discloses that this child is neither homeless nor dependent." Section 15-1335 of the 1952 Code is as follows:

"The children's court of Spartanburg County shall have exclusive original jurisdiction of any case of a child less than sixteen years of age who is delinquent, dependent or neglected and of all other persons involved with or contributing to the dependency or delinquency of any child residing in or being at the time within said county or any city therein."

Under the definition found in Section 15-1334, "A child is 'dependent' who is dependant upon public support, who is destitute, homeless or abandoned, whose custody is subject to controversy, * * *."

Also to be considered is Section 15-1397 of the 1952 Code, which is a general provision applicable to all children's courts and is as follows:

"If it appears from the petition that the child is delinquent or is in such condition or surroundings that the welfare of the child requires that its custody be immediately assumed

the court·may endorse or cause to be endorsed upon the summons a direction that the officer serving it shall at once take such child into custody."

It will be noted that there is a sharp conflict in the testimony as to whether the child was "dependent" when this action was commenced. The Jarretts say that the welfare worker secured possession under the pretext that it was necessary for her to have the child for a few hours in order to get acquainted, and then refused to return her. The welfare worker was quite positive that the Jarretts voluntarily relinquished the child after having concluded that they did not want her in the home any longer. The Judge of the Children's Court accepted the version of the welfare worker. He said in his order:

"I was not impressed with Mr. and Mrs. Jarrett, having heard them testify at length with regard to all the facts and circumstances in the case and I feel that Mr. Jarrett was not truthful with the Court. This is a case of foster parents being unable to meet the emotional problems of the child, rejecting the child and giving her up, then feeling that they want to change their minds and keep the child. It is inescapable that Mr. Jarrett requested that the child be removed from his home and that Mrs. Jarrett consented thereto."

The evidence does not justify our disturbing the foregoing conclusion. Under the facts found the Judge of the Children's Court clearly had jurisdiction.

It is true that the Jarretts now say that they want the child and need no financial assistance from the Department of Public Welfare to support her. It further appears that three or four days after the commencement of this action the father and mother deeded this child to the Jarretts. But the jurisdiction of the court must be determined by the conditions existing when the suit was brought. "As a·general rule, jurisdiction once acquired is not defeated by subsequent events, even though they are of such a character as would have prevented jurisdiction

from attaching in the first instance." 21 C. J. S., Courts, § 93. Also, see *Minneapolis & St. L. R. Co. v. Peoria & P. U. Ry. Co.,* 270 U. S. 580, 46 S. Ct. 402, 70 L. Ed. 743.

It is equally clear that under Section 15-1397, the facts stated in the petition were sufficient to justify the Court in assuming immediate custody of the child. There is an exception by the mother to the effect that the Court erred in holding that she had the burden of showing that she was a fit and proper person to to have custody of the child. She further says in her brief that if custody is not awarded the Jarretts, the child should be returned to her. We do not construe the order of the Judge of the Children's Court as holding that the burden of proof as to fitness was upon the mother. But be that as it may, any error in this respect is immaterial. The mother did not in her answer seek custody of her daughter. Her position was that she had delivered custody to the Jarretts and later after the commencement of this action deeded the child to them. This certainly does not indicate a desire that the child be returned to her.

It is contended by the Jarretts that the Court erred in not awarding them custody of the child. The Judge of the Children's Court stated:

"There is so much emotional upset in the background of Mrs. Jarrett that I feel this child would be irreparably damaged by returning her to that home. Adoption should be made for the benefit of the child rather than to cure mental illnesses of the adoptive parents. The Jarretts have had the services of the Mental Hygiene Clinic, a psychiatrist, a medical doctor and the Department of Public Welfare for a period of many months and still wanted to give up the child, feeling they could not meet her problems and that she was too great a burden on Mrs. Jarrett. I find and hold that the Jarretts are not qualified foster parents for the child and that it is in no wise in the best interest of the child to return her there."

We certainly cannot say that the foregoing conclusion of the trial Judge, who had the opportunity of seeing and observing the witnesses, is against the greater weight of the evidence.

Finally, the Jarretts contend that the Court erred in holding "that a parol gift was made by appellants to Department of Public Welfare and that said parol gift was held binding on all parties." We think appellants have misconstrued the order of the Judge of the Children's Court. He merely held that appellants had surrendered the child to the Department of Public Welfare and retained jurisdiction "to enter such further orders as may be required (for) the welfare of the child."

All exceptions are overruled and judgment affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.