18246

George R. FOSTER, Appellant-Respondent, v.
Jeanette O. NORDMAN, Respondent-Appellant
(137 S. E. (2d) 600)

*Messrs. Charles W. McTeer,* of Chester, and *John M. Spratt,* of York, *for Appellant, George R. Foster,*

*Messrs. O. W. Clayton,* of Charlotte, N. C., and *W. G. Finley,* of York, *for Respondent, Jeanette O. Nordman,*

*Messrs. O. W. Clayton,* of Charlotte, N. C., and *W. G. Finley,* of York, *for Appellant, Jeanette O. Nordman.*

*Messrs. Charles W. McTeer,* of Chester, and *John M. Spratt,* of York, *for Respondent, George R. Foster.*

July 27, 1964.

TAYLOR, Chief Justice.

This action was commenced in the Court of Common Pleas for York County by George R. Foster against Jeanette Nordman, a minor of the age of 20 years, for the purpose of

having declared null and void a certain marriage ceremony entered into by the parties at York, S. C., on December 19, 1962. Two separate appeals are presented.

The complaint alleged that the parties are residents of the State of North Carolina, that plaintiff entered into marriage with defendant under duress, coercion and threats of physical harm and violence, and that said marriage was never consummated. A guardian ad litem was appointed for defendant and an answer filed denying that plaintiff entered into the marriage under duress or coercion but that he freely and voluntarily entered into the marriage contract and that such marriage was consummated by cohabitation after the ceremony and that plaintiff is the father of defendant's unborn child. Defendant further alleged that she and the unborn child were entitled to the protection of the Courts of South Carolina and asks that the Court order plaintiff to pay her support money for herself and her unborn child *pendente lite,* for her prenatal care, medical expenses, attorneys' fees and a fee for a guardian ad litem. Defendant also asked for a divorce *a mensa et thoro.* Plaintiff filed reply denying that he is the father of defendant's unborn child and alleged that he is without financial resources and totally dependent upon his father for support.

A rule to show cause was issued directing plaintiff to appear and show cause why he should not pay defendant support money for herself and her unborn child *pendente lite,* medical expenses and attorneys' fees. After hearing, the Honorable George T. Gregory, Jr., Judge of the Sixth Judicial Circuit, by Order of October 26, 1963, required plaintiff to pay support money, medical expenses not covered by insurance and a fee to the guardian ad litem, and, further, required plaintiff to file bond in the amount of $5,000.00 conditioned for the payment of the support money. Plaintiff now appeals.

Plaintiff later filed a motion to terminate the guardianship of defendant and dismiss the guardian ad litem on the ground defendant had attained the age of 21 years on June

13, 1963. Thereafter, defendant filed a return resisting the motion to dismiss the guardian ad litem and on July 17, 1963, served notice of motion to make or join defendant's infant daughter, Janet Elizabeth Foster, who was born July 7, 1963, as a party defendant. After hearing, Judge Gregory, by his Order of January 2, 1964, denied the motion, holding that the infant was not a necessary and proper party to the action and defendant now appeals.

Although neither party has questioned the jurisdiction of the Circuit Court, we decline to pass upon the exceptions raised in these two cases as we have determined *ex mero motu* that the Court below had no jurisdiction of the parties to this action. *McCullough v. McCullough,* 242 S. C. 108, 130 S. E. (2d) 77.

"A court of competent jurisdiction is one having power and authority of law at the time of acting to do a particular act; one that has jurisdiction both of the person and of the subject matter; one provided for in the constitution or created by legislature and which has jurisdiction of the subject matter and of the person; * * *." 21 C. J. S. Courts § 22, p. 35.

"* * * in personal actions jurisdiction both of the subject matter and of the person or party whose rights are to be affected are essential, and a state court can acquire no jurisdiction where neither the person nor any property of defendant can be found within the state." 21 C. J. S. Courts § 35, p. 44, citing the South Carolina cases of *Knight v. Fidelity and Casualty Co. of N. Y.,* 184 S. C. 362, 192 S. E. 558; *Hodges v. Lake Summit Co.,* 155 S. C. 436, 152 S. E. 658; *Emanuel v. Ferris,* 63 S. C. 104, 41 S. E. 20.

In determining the question of jurisdiction, our first inquiry is whether the Court had jurisdiction initially to entertain the action brought, for the general rule is that the jurisdiction of a Court depends upon the state of affairs existing at the time it is invoked. If jurisdiction once attaches to the person and subject matter of the litigation, the subsequent happening of events will not ordinarily oper-

ate to oust the jurisdiction already attached. *Butler v. Whitt*, 230 S. C. 279, 95 S. E. (2d) 496; 14 Am. Jur., Courts, Section 170; 21 C. J. S. Courts § 93. *Piana v. Piana*, 239 S. C. 367, 123 S. E. (2d) 297.

The question confronting the Court is whether the Courts of South Carolina have jurisdiction to annul a marriage performed in South Carolina where the parties thereto were at all times citizens of another state and neither party has acquired bona fide residence in this state.

In *Everly v. Baumil*, 209 S. C. 287, 39 S. E. (2d) 905, an action to annul a marriage contracted in the State of Georgia, the defendant being a resident of the State of South Carolina, the Court said:

"* * * Does the Court of Common Pleas of Charleston County, where the defendant now resides and has her domicil, have jurisdiction in the sense of having the power to annul a marriage which was not celebrated in this State, but in the State of Georgia? Or do the Courts of Georgia, as contended by defendant, have exclusive jurisdiction of such an action? The overwhelming weight of authority, both in this country and in England, is to the effect that the courts of the domicil of the parties have jurisdiction to annul a marriage celebrated elsewhere. *Cunningham v. Cunningham*, 206 N. Y. 341, 99 N. E. 845, 43 L. R. A., N. S., 355; *Christlieb v. Christlieb*, 71 Ind. App. 682, 125 N. E. 486; *Gwin v. Gwin*, 219 Ala. 552, 122 So. 648; *Hanson v. Hanson*, 287 Mass. 154, 191 N. E. 673, 93 A. L. R. 701; *Levy v. Levy*, 309 Mass. 230, 34 N. E. (2d) 650; *Davis v. Davis*, 119 Conn. 194, 175 A. 574; *Cross v. Cross*, 110 Mont. 300, 102 P. (2d) 829; *Hitchens v. Hitchens*, D. C., 47 F. Supp. 73; Restatement of the Law of Conflict of Laws, American Law Institute, Section 115. It is further generally held that the domicil of one of the parties within a state is sufficient to confer jurisdiction upon its courts to grant a decree of annulment where, as in the instant case, the court has jurisdiction of both parties by voluntary appearance or personal service within the State. * * *

"We do not think there is any reasonable justification for denying to the courts of the forum where the parties are domiciled the power to annul a marriage solemnized in another state. It is fundamental that each state has the right to determine the marital status of its citizens under its laws."

The Court then points out in that case:

"We need not pause to discuss or determine whether in annulment actions jurisdiction of the domicil and of the locus celebrations should be concurrent and not confined to the domicil."

This question, however, is the one with which we are now concerned.

"* * * There is no jurisdiction of an annulment suit merely because the marriage was performed within the state. Jurisdiction lies in the courts of the state where the parties are residing, or where one of them resides, at the time of suit, irrespective of the place where the marriage may have been contracted or solemnized. While courts of the state where a marriage was contracted by nonresidents may have jurisdiction if they have not established another matrimonial domicile, it is settled that, in the absence of some statutory limitation, the courts of the state wherein the parties reside, or in which one of them resides, have jurisdiction to annul a marriage contracted in another state, although they may never have cohabited in the state where suit is brought." Nelson on Divorce, Section 21.08, p. 284.

In an annotation in 128 A. L. R. 61, entitled "Jurisdiction, as between different states, of suit to annul marriage," we find the following:

"There is a conflict of authority on the question whether the courts of a state or country in which the marriage in question was celebrated and which was not the domicil of at least one of the parties, have jurisdiction to annul the marriage. One line of cases holds that notwithstanding the fact of nonresidence of both parties, the courts of such state or country have jurisdiction to annul the marriage. * * *

"Another line of cases hold that the courts of the state where the marriage is celebrated have no jurisdiction to annul the marriage if neither of the parties was domiciled within the state. * * *"

Section 20-41, Code of Laws of South Carolina, 1962, provides: "The court of common pleas shall have authority to hear and determine any issue affecting the validity of a contract of marriage." It is evident that the Legislature manifested no intention in this section to set forth the requirements of residence and domicil in an action to annul a marriage contract as it has in actions for divorce. See Section 20-103, Code of Laws of South Carolina, 1962.

Section 20-45 of the Code provides the method of obtaining service in an action to annul a marriage contracted in this State under Sections 20-6, 20-41, and 20-43, Code of Laws of South Carolina, 1962, upon a defendant who is a nonresident or who has left the State. There is nothing here which purports to set forth the conditions necessary to jurisdiction or from which it can be inferred that our Courts have jurisdiction of an annulment action where the marriage was entered into in South Carolina by nonresidents. This Section (20-45) in our opinion is not applicable where all parties are residents of another state.

We are further of opinion that the better reasoning and rule is expressed by those cases which hold that the courts of the state where the marriage is celebrated have no jurisdiction to annul the marriage if neither of the parties is domiciled within the state. See 128 A. L. R. 61 and supplements thereto.

For the foregoing reasons we are of opinion that all Orders should be set aside and reversed for lack of jurisdiction; and it is so ordered.

Reversed.

Moss, Lewis, Bussey and Brailsford, JJ., concur.