916 P.2d 228

**State of New Mexico ex rel. Human Services Department, In the Matter of Megan S. and Randi S., children, and concerning Christy S. and Gary B., Respondents.**

**Raymond L. SPEAR, III, Intervenor–Appellant,**

v.

**Jerry McDERMOTT and Linda McDermott, Intervenors–Appellees.**

**No. 15850.**

Court of Appeals of New Mexico.

March 12, 1996.

Certiorari Denied April 23, 1996.

Robert D. Levy, Levy & Geer, P.A., Albuquerque, Christine Zuni, Isleta Pueblo, Clark Varnell, Albuquerque, for Megan S. and Randi S.

Chester Randy Jones, Tahlequah, for Amicus Curiae Megan S. and Randi S.

Kathy Carter–White, Tahlequah, for Amicus Curiae Christy S.

Charles C. Bruton, The Buck Firm, P.C., Alamogordo, for Intervenor–Appellant and Amicus Curiae Cherokee Nation.

## OPINION

APODACA, Chief Judge.

1. The opinion filed on February 8, 1996 is withdrawn on the Court's own motion, and the following opinion is substituted in its place.

2. Raymond Spear appeals from the decision of the children's court holding him in contempt of court and imposing severe monetary sanctions for his violation of the court's order. The order and a later contempt action arose from abuse and neglect proceedings involving Spear's twin grandchildren, Megan and Randi (the twins). Spear raises a number of issues, including attacks on the jurisdiction of the children's court and the defense of inability to comply. We affirm the contempt order in part and reverse it in part.

## I. FACTUAL AND PROCEDURAL BACKGROUND

3. The underlying abuse and neglect proceeding began with the filing of a neglect petition in 1988. Legal and physical custody of the twins was granted to the New Mexico Human Services Department, now the Children, Youth and Families Department (the Department). Spear and his wife moved to intervene in the proceedings and were allowed to do so. The twins were placed with one foster family in 1989 and with another in 1990. The case then began a tortuous journey through the legal system. The twins' mother appealed the 1990 dispositional order placing the twins with the second foster family.

4. On the basis of a motion filed by the Department in that appeal, this Court remanded the case for a determination concerning the applicability of the Indian Child Welfare Act, 25 U.S.C.S. Sections 1901–1963 (1995) (the ICWA). The children's court then determined that the ICWA did not apply, and we reversed that determination following yet another appeal.

5. Sometime after this second remand to the children's court, the children's court appointed two attorneys for the twins to ensure compliance with the ICWA. The twins remained with the second foster family during the pendency of these appeals. In June 1992 the Department gave notice to the foster parents and the court of its recommendation and intent to place the twins in the physical custody of the Spears pursuant to 25 U.S.C.S. Section 1915(b), which provides that "[i]n any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary ... with ... a member of the Indian child's extended family." The Department, the Spears, the Tribe, and the twins' mother filed a joint motion for change of foster care to the Spears. The court refused to allow the Department to make that placement.

6. The Cherokee Tribe in Oklahoma entered an appearance in the case in August 1992, and reserved the right to request transfer of the case to the Cherokee tribal court in that state. Almost immediately, Spear, his wife, and the Cherokee Tribe filed a petition for a writ of habeas corpus in the New Mexico Supreme Court, challenging the refusal of the children's court to remove the children from their foster home and place them with the Spears. That petition was referred to a special master, who recommended denying it. Our Supreme Court followed that recommendation in September 1992, and denied the requested relief. At a hearing held September 15, 1992, before the decision of the Supreme Court was handed

down, the Cherokee Tribe joined with the Spears and the twins' mother in a motion to transfer jurisdiction of the case to the Cherokee tribal court.

7. Additional proceedings took place in the children's court, with no final resolution of the case. In August 1993, Spear submitted a motion to the children's court requesting permission to take the twins to Tahlequah, Oklahoma to attend the Cherokee National Holiday from September 1 to September 8. That motion was granted. While the twins were in Oklahoma, however, Spear's wife (who, along with the twins' mother, had previously moved to Oklahoma) filed a petition and an affidavit requesting an ex parte emergency custody order from the Cherokee tribal court in that state. The tribal court issued the ex parte order on September 2, placed the twins in the emergency custody of the Cherokee Nation, and ordered Spear to surrender the children. The tribal court also scheduled a hearing in the matter.

8. When Spear did not return the twins to New Mexico on September 8, the twins' foster family filed a motion for an order to show cause, and the order was issued on September 9, 1993. Spear filed a petition to remove the case to federal court. In the meantime, the case was proceeding through the Cherokee tribal court. The tribal court held a hearing, at which the twins' foster family appeared, as well as an attorney for the Department and one of the attorneys previously appointed to represent the twins. Over the jurisdictional objections and arguments of the New Mexico contingent, the tribal court asserted jurisdiction over the twins under the ICWA and scheduled a dispositional hearing for November 1993. The twins' New Mexico attorneys attempted to appeal this decision, but their effort was thwarted when Spear and his wife filed a motion to dismiss the appeal, alleging the untimely filing of the appeal. The tribal court ultimately issued dispositional orders placing the twins with Spear's wife temporarily, and eventually integrating the twins back into their mother's custody.

9. Meanwhile, in New Mexico, the filing of the petition for removal to federal court

stayed the contempt proceeding of the children's court. In July 1994, the federal court determined that removal had not been appropriate and remanded the case to the children's court. The hearing of the children's court on the order to show cause was finally held in September 1994. Spear did not appear at the hearing but was represented by counsel. Following the hearing, the children's court held Spear in contempt for failing to return the twins to New Mexico, as required by the August 1993 order. The court issued an interim order, entering judgment against Spear for a $25,000 lump sum to create a fund for future expenditures necessary to reassert New Mexico's jurisdiction over the twins, presumably through federal court litigation. If the twins were returned to New Mexico before the entire $25,000 fund was exhausted, Spear would be entitled to the return of the balance.

10. Later, the children's court entered a final contempt order imposing a fine of $1500 per day for every day the twins were not returned to their foster family in New Mexico. This fine was in addition to the $25,000 amount the court ordered to be paid previously. Spear appeals the contempt orders.

11. We note that a number of *amicus curiae* briefs have been filed in this appeal by the Cherokee Nation, Mother, and the attorney appointed by the Cherokee tribal court to represent the twins. For ease of reference, we refer to all arguments opposing the action of the children's court, whether made in Spear's brief or in the *amici* briefs, as Spear's arguments.

## II. DISCUSSION

### A. Evidentiary Issues

12. At the contempt hearing, Spear's counsel argued that (1) the children's court had lost jurisdiction over the case, and (2) it was impossible for Spear to comply with the August 1993 order. These defenses were based in large part on various orders issued by the Cherokee tribal court. Spear did not appear in New Mexico to testify. Spear's counsel asked the children's court to take judicial notice of the tribal court's orders and other documents. The children's court re-

fused to do so because the documents had not been properly certified. Spear's counsel then attempted to authenticate the documents through his own testimony and through testimony of one of the twins' attorneys. These efforts were also rebuffed when the court sustained the objections of the twins' attorney, again on the basis that the documents were not certified. The children's court thus refused to consider the tribal court documents at all in connection with the case pending before it. Spear contends that this refusal was error, and we agree.

 13. The children's court may have correctly refused to take judicial notice of the tribal court documents because a document is not self-authenticating unless it has been properly certified. SCRA 1986, 11–902 (Repl.1994). But there were additional methods under which the court could have considered the documents other than by taking judicial notice. For example, public records such as court documents do not necessarily have to be certified to be admitted into evidence. They can be admitted under SCRA 1986, 11–901 (Repl.1994) if they are adequately authenticated by an appropriate witness. SCRA 11–901(B)(7); *see* 5 Jack B. Weinstein et al., *Weinstein's Evidence* ¶ 901(b)(7)[01], at 901–118, –120 (1995) (judicial records are "public records" as contemplated by the rule). All that is necessary is the testimony of a witness who knows that the documents in fact came from the legal custodian of the document. SCRA 11–901(B)(1) (authentication requirement is satisfied by testimony of a witness who knows that a matter is what it is claimed to be). The testimony of an attorney who has participated in certain litigation and can adequately identify documents pertaining to that litigation should be sufficient to support admission of the document. *See, e.g., Wausau Sulphate Fibre Co. v. Commissioner*, 61 F.2d 879, 880 (7th Cir.1932) (testimony of counsel was sufficient to identify a public record).

14. In this case, as we previously noted, Spear's counsel attempted to authenticate the Cherokee tribal court's documents and orders through his own testimony, based on his personal knowledge of the documents.

He also attempted to have opposing counsel, who also testified at the hearing, identify some of the documents through opposing counsel's personal knowledge gained from participation in the litigation. We note that there was no question about the authenticity of the documents below or of their contents, but instead there was merely a technical question concerning lack of certification and an objection as to relevance by the twins' attorney. Under these circumstances, we believe the tribal court documents should have been admitted into evidence and considered by the children's court. SCRA 11–901. We hold that the children's court erred in denying admission of the documents.

██ 15. Having so held, we must determine how our holding affects the disposition of this case. Normally, of course, where a court has not considered evidence that should have been admitted, we will remand for a new hearing at which the evidence is to be considered. In this appeal, however, there are several factors that militate against such an approach. First, the children's court was obviously aware of the contents of the tribal court's orders. The children's court specifically rejected one of Spear's contentions on its merits. That contention concerned the tribal court's purported dismissal of the New Mexico proceedings. Additionally, in ruling on one of the objections to Spear's offer of the tribal court's ex parte emergency order into evidence, the court stated that it did not see how the ex parte order would be relevant unless Spear was at the hearing to testify that he actually received the order. Finally, the court reviewed the documents that had been filed as part of the record proper and offered into evidence to determine whether they had been properly authenticated. The children's court thus knew the essential contents of the tribal court documents and made it clear that the documents did not affect its view of the case.

16. The evidence that was excluded here is entirely documentary. There is no dispute concerning the contents of the documents or their interpretation. The only question concerns the legal effect of those documents. Additionally, the documents essential to this appeal are all part of the record proper filed

in this Court and are thus fully available to us for our own consideration. Under such circumstances, the goal of judicial economy will be served if we take judicial notice of the documents and their contents, rather than remand for a new hearing. *See* SCRA 1986, 11–201(F) (Repl.1994) (judicial notice may be taken at any stage of the proceeding); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir.1989) (in the interest of justice, appellate court took judicial notice of defendants' guilty pleas in criminal case concerning same property and issues as current case; citing other cases for proposition that judicial notice can be taken of other courts' proceedings, even on appeal); 1 Weinstein, *supra,* ¶ 201[06], at 201–60, –61 (1995) (appellate court may take judicial notice under certain circumstances). In this case, as we have stated, no one disputes that the orders were actually entered by the Cherokee tribal court. It is also reasonably apparent that the decision of the children's court would not change if we should remand with instructions that it consider the tribal court's documents. We therefore take judicial notice of the documents contained in the record proper (and in the packet of certified tribal court documents submitted to this Court by Spear) and proceed to address the merits of Spear's appeal, rather than remand to the children's court.

### B. Jurisdictional Issues

17. Spear makes at least three arguments in support of his contention that the children's court did not have jurisdiction over the case when it imposed the contempt sanctions against him. Initially, he contends that the children's court lost jurisdiction because its last custody order, which continued legal custody of the twins with the Department, expired by statute in September. 1992, long before entry of the August 1993 order, the failure to comply with that order, and the later contempt proceedings. *See* NMSA 1978, § 32–1–38 (Repl.Pamp.1989), currently codified at NMSA 1978, § 32A–4–24 (Repl. Pamp.1995) (judgment vesting legal custody of child in agency shall remain in force for a period not exceeding two years from the date entered).

18. According to Spear, the effect of the expiration of this two-year period was as follows: (1) legal custody of the twins reverted to the twins' mother, and the mother's domicile (in Oklahoma) became the domicile of the twins; (2) the mother (who moved from New Mexico during the pendency of the proceeding) was domiciled within the Cherokee Nation in Oklahoma, so the twins became domiciled there even though they were still physically in New Mexico and had never set foot in the Cherokee Nation; (3) under the ICWA, the Cherokee tribal court suddenly became vested with exclusive, rather than concurrent, jurisdiction over the abuse and neglect action involving the twins.

19. We agree with Spear that, under the ICWA, a tribal court has exclusive jurisdiction over cases involving Indian children domiciled on the reservation. 25 U.S.C.S. § 1911(a). Spear contends that, for purposes of the ICWA, the domicile of a parent is the domicile of the child. We are far from certain, however, that Spear is correct in arguing that, after two years, a custody order simply evaporates and legal custody automatically reverts to the parent who has abused or neglected the child. Be that as it may, we need not decide that question in this appeal. Even if we were to assume, for purposes of this appeal, that Spear is correct and that, two years after the last custody order, the twins' domicile changed from New Mexico to the Cherokee Nation, we believe Spear's argument that the children's court lost jurisdiction over the case as a result of the change of domicile is without merit.

20. It is undisputed that, at the time the abuse and neglect proceedings began in the children's court, the twins and their mother were both residing in and domiciled in New Mexico, rather than in the Cherokee Nation. Under those circumstances, the children's court had concurrent jurisdiction over the case, sharing that jurisdiction with the Cherokee tribal court. *See* 25 U.S.C.S. § 1911(b). It is a well-established rule in both federal and state courts that jurisdiction over a case is established at the time an action is filed and cannot be voided by later events. *See, e.g., Mid–American Waste Sys., Inc. v. City of Gary, Ind.,* 49 F.3d 286, 292

(7th Cir.1995); *F. Alderete Gen. Contractors, Inc. v. United States,* 715 F.2d 1476, 1480 (Fed.Cir.1983); *Resolution Trust Corp. v. Foust,* 177 Ariz. 507, 517, 869 P.2d 183, 193 (Ct.App.1993); *Foster v. Nordman,* 244 S.C. 485, 137 S.E.2d 600 (1964). This rule does not apply if Congress (or another legislative body) clearly indicates an intent to divest jurisdiction under specified circumstances. *Alderete,* 715 F.2d at 1480; *Foust,* 869 P.2d at 193.

21. Nonetheless, we have found nothing in the ICWA to indicate that Congress intended such divestiture to occur if there was a change in the parties' domicile during the pendency of a case. *Cf. Alderete,* 715 F.2d at 1480 (nothing in statute or legislative history indicated that Congress did not desire application of general rule concerning continuing jurisdiction). We therefore hold that the children's court, which had jurisdiction at the beginning of the proceedings before it, retained that jurisdiction until formal transfer, even if we assume that the twins did become domiciled within the Cherokee Nation in Oklahoma while the case was pending in New Mexico.

■ 22. To the extent that Spear may be arguing that the expiration of the custody order divested the children's court of jurisdiction, we disagree. We are aware of no authority or rationale, and Spear has provided none, proposing that the expiration of an interim order entered by a court could somehow cause the loss of the court's jurisdiction over the entire case. We reject that proposition.

■ 23. As another jurisdictional issue, Spear contends that the children's court lost jurisdiction because the tribal court purported to dismiss the New Mexico proceedings "in the interest of judicial economy" under its dispositional order of November 4, 1993. Spear contends that the tribal court had authority to do so under 25 U.S.C.S. Section 1914. We disagree.

24. What the federal statute actually provides is that a party may petition any court of "competent jurisdiction" to invalidate a foster care placement or a termination of parental rights upon a showing that the ac-

tion violated certain other provisions of the ICWA. For purposes of this argument, we assume that the tribal court was a court of "competent jurisdiction" with the power to invalidate the foster care placement of the children's court. *See Kiowa Tribe of Oklahoma v. Lewis,* 777 F.2d 587, 592 (10th Cir. 1985) (statutory phrase refers to any court in which action could have been initially brought), *cert. denied,* 479 U.S. 872, 107 S.Ct. 247, 93 L.Ed.2d 171 (1986).

25. We reject, however, the argument that the specific authority to invalidate a placement or termination of parental rights decree should be expanded to include the power to dismiss an on-going action pending in another court. Such a result would create havoc, allowing both state and tribal courts to simply dismiss each other's proceedings to obtain control of a case. Essentially, it would also override the provision in the ICWA that allows a state court to refrain from transferring a case to tribal court if there is good cause for such refusal. *See* 25 U.S.C.S. § 1911(b). We therefore hold that the Cherokee tribal court did not have the authority to dismiss the pending New Mexico case and that the tribal court's order did not divest the children's court of jurisdiction.

■ 26. We note also that the tribal court's purported dismissal of the New Mexico proceeding came almost two months after the order of the children's court had been violated. The children's court, therefore, definitely had jurisdiction at the time it entered the August 1993 order and at the time the order was violated. Although we need not decide the issue, especially because no party has briefed it, it would seem reasonable for the children's court to retain jurisdiction to punish the violation of its order, even if we assume it had somehow lost jurisdiction over the underlying action. *Cf. United Nuclear Corp. v. General Atomic Corp.,* 98 N.M. 633, 644, 651 P.2d 1277, 1288 (1982) (holding that court could hear supplemental collateral pleadings after appeal even though court lost jurisdiction over central issues because of appeal), *cert. denied,* 460 U.S. 1017, 103 S.Ct. 1262, 75 L.Ed.2d 488 (1983).

27. Spear also argues that the children's court lost jurisdiction because it was not

following the mandates of the ICWA. This argument appears to confuse the concept of jurisdiction with a court erring on the merits or judicial error. For example, Spear argues that the children's court was asked to transfer the case to the tribal court and wrongly declined to do so. Even so, it would appear to be an error requiring correction by way of an appeal or a writ proceeding, rather than a circumstance causing a loss of jurisdiction. *See, e.g., State v. Bailey,* 118 N.M. 466, 469, 882 P.2d 57, 60 (Ct.App.) (district court that issued improper injunction did not lose jurisdiction so as to allow defendant to violate injunction and attack the order collaterally), *cert. denied,* 118 N.M. 256, 880 P.2d 867 (1994); *Mid–American,* 49 F.3d at 292 (defendant held in contempt for violation of court order; court later determined that complaint failed to state cause of action and should be dismissed; defendant still required to obey order, even if it was later determined to be erroneous, despite defendant's claim that court lacked jurisdiction to enter order). In summary, even if the decisions of the children's court were not in conformance with the ICWA, the court's jurisdiction and power to act in the matter would not simply end, and its ability to enter the order that Spear disobeyed would not be affected. The court would simply have erred on the merits. For these reasons, we reject Spear's challenges to the jurisdiction of the children's court.

## C. Defense of Inability to Comply
### 1. Distinguishing Between Sanctions Imposed

28. In addressing the "inability to comply" issue, we recognize that two different kinds of contempt sanctions were imposed in this case. *See El Paso Prod. Co. v. PWG Partnership,* 116 N.M. 583, 591, 866 P.2d 311, 319 (1993) (civil contempt sanctions may be employed to coerce compliance and to compensate for losses sustained), *cert. denied,* —— U.S. ——, 114 S.Ct. 2678, 129 L.Ed.2d 813 (1994). One was compensatory, to redress the harm caused by Spear's failure to return the twins to New Mexico. The $25,000 fund set up by the contempt order was to be used to fund efforts to enforce that order—that is, to obtain the return of the twins. The $1500 per day fine, on the other hand, was coercive in nature, that is, to induce Spear to return the twins to New Mexico as soon as possible. The compensatory sanction must be distinguished from the coercive sanction because different rules apply to the two types of sanctions, as we discuss below.

29. Although the language used in some cases is imprecise, the better rule appears to be that an inability to comply with an order, *even if the inability was self-created,* is a defense to coercive sanctions but not to compensatory sanctions. *Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 782 n. 7 (9th Cir.1983) (impossibility is not a defense to criminal contempt or compensatory civil contempt if it is self-induced; but it is a complete defense to coercive contempt, even if self-induced); *cf. In re Marc Rich & Co.,* 736 F.2d 864, 866 (2d Cir.1984) (in case involving fines of $50,000 per day designed to coerce party to comply with subpoena for documents, court stated that persons unable to comply with court order, due to their own bad faith or otherwise, may be subjected to criminal sanctions but may not be held in civil contempt); *United States v. Asay,* 614 F.2d 655, 660 (9th Cir.1980) (in case involving compensatory fine of $2205, court stated that inability to comply is not a defense if the person charged is responsible for the inability).

30. We consider this principle to be reasonable. If it is impossible for a person to obey a court order, even if that impossibility was self-induced, a coercive sanction such as incarcerating the person indefinitely or imposing a daily fine would be an exercise in futility—impossibility is impossibility, no matter how it was created. On the other hand, a person faced with a court order should not be able to circumvent the order simply by creating an inability to comply with the order. A court should be able to impose, for example, a one-time compensatory fine or a sentence of imprisonment to compensate or punish for the harm done by the contemnor. Consequently, we adopt the rule delineated in *Falstaff Brewing Corp.—*where there is genuine inability to comply,

even if the inability is self-created, a complete defense to coercive contempt sanctions exists; such inability is not, however, a defense to compensatory sanctions or criminal contempt.

## 2. The Compensatory or Criminal Sanction

■ 31. We now apply this principle to the facts of this appeal, addressing the compensatory $25,000 sanction first. It is critical to our analysis to point out that the contemnor has the burden of proof concerning inability to comply with a court order. *See, e.g., Moreman v. Butcher,* 126 Wash.2d 36, 891 P.2d 725, 728 (1995) (contemnor had burden of production and persuasion regarding his claimed inability to comply). Logically, this burden extends to the self-inducement issue; that is, the contemnor has the burden of proving not only that it is impossible for him to comply, but that he did not create the impossibility.

■ 32. We must bear in mind another principle—that the mere existence of a contrary court order is not a defense to a contempt action for failing to obey a court order. Alois Valerian Gross, J.D., Annotation, *Contempt Based on Violation of Court Order Where Another Court Has Issued Contrary Order,* 36 A.L.R.4th 978 (1985). The circumstances surrounding each case must be considered, especially the contemnor's role, or lack of such role, in obtaining the contrary order. *See In re Door,* 195 F.2d 766, 770 (D.C.Cir.1952) (defendant held in contempt where he circumvented one court's order by obtaining contrary order from different court).

■ 33. Spear's impossibility defense rests completely on the existence of the ex parte emergency custody order that forced him to surrender custody of the twins to the Cherokee Nation before he could return them to New Mexico and on the later tribal court judgment taking jurisdiction of the case and deciding the custody issues involving the twins. As we observed above, however, Spear had the burden of proving that he had no part in the issuance of these orders. He also had the burden of proving that the orders, rather than some other factor, caused him not to return the twins to New Mexico. We hold that Spear did not meet that burden.

34. Not only did Spear not testify, but he did not even appear at the contempt hearing. Thus, there was no testimony that he was even aware of the tribal court's ex parte order at the time he refused to bring the twins back to New Mexico. More importantly, there was no testimony that he was an innocent party in the events giving rise to the tribal court's order. To be sure, Spear's attorney did testify that Spear was not a party to the ex parte proceedings. However, there was no testimony that Spear was unaware that his wife contemplated taking such action while the twins were visiting in the Cherokee Nation.

35. Spear also failed to establish that he did not participate in the planning of the tribal court action. Nor did he explain how and where the ex parte order was served on him and what efforts, if any, he took to fight the issuance of that order or its effect. Finally, Spear did not explain why, if he was an innocent bystander to the initial tribal court proceedings, he joined in the motion opposing the appeal filed by the twins' New Mexico attorneys.

36. For example, if Spear had been present at the contempt hearing, he could have testified that he was completely unaware of his wife's plans until he was ordered to surrender custody of the twins by the tribal court, and only afterward decided to join in the ensuing litigation in Oklahoma. Absent such evidence from Spear, we are left with the following facts: the tribal court issued an order prohibiting Spear from obeying the order of the children's court, the tribal court order was issued at the behest of Spear's wife, Spear obeyed that order rather than the children's court order, and Spear actively resisted efforts to appeal the tribal court order.

37. We consider this evidence as patently insufficient to prove that Spear had no part in creating his inability to comply with the order of the children's court. For that reason, we hold that Spear's impossibility de-

fense fails as to the $25,000 compensatory sanction.

### 3. The Coercive Sanction

■ 38. The $1500 per day coercive sanction is another matter. We have already held that Spear's role in creating the impossibility is irrelevant to the propriety of such a sanction. If it was impossible for him to comply with the order of the children's court by returning the twins, he has a complete defense to the $1500 per day penalty. Spear has demonstrated such impossibility in this case. He has neither legal nor physical custody of the twins because the Cherokee tribal court has assigned those rights to another person. The only way Spear could bring the twins back to New Mexico would be to kidnap them. We determine that this showing effectively establishes an impossibility defense to the coercive sanction. Cf. Newman v. Graddick, 740 F.2d 1513, 1528–29 (11th Cir.1984) (Attorney General could not be held in contempt for failing to remedy overcrowded prisons, even though he spoke out against inmate release plan and litigated against plan, where there was no showing that he had the authority to release the prisoners himself); Tatro v. Tatro, 24 Conn. App. 180, 587 A.2d 154, 157 (1991) (mother whose sister had child in Taiwan could not be held in jail until child was returned because mother had no way of ensuring that child would be returned); Ex parte Gray, 649 S.W.2d 640, 643 (Tex.Crim.App.1983) (attorney had defense to contempt for refusal to accept appointment to represent defendant where appellate court had previously forbidden him from accepting such appointments).

39. The twins' answer brief contends that Spear could join in a lawsuit aimed at returning the twins to New Mexico. However, there has been no specific order directing Spear to do so. Instead, he is being fined $1500 every day until the twins are returned, even though he has no power at present to return them. Joining in a lawsuit would most likely not give him that power for a long time, if ever. It is possible, although we do not decide the issue, that the children's court could properly have entered an order requiring Spear to take some legal action to attempt the return of the twins to New Mexico. The court did not take that action, however. Until it can be shown that Spear can legally comply with the order of the children's court, the coercive sanctions imposed by the children's court are not appropriate. We therefore reverse this portion of the contempt sanction.

### 4. Summary of our Holding

40. Our holding on the sanctions issue may be summed up as follows. On the one hand, the mere showing of a contrary court order was not sufficient to establish a defense to the compensatory sanction imposed by the children's court. On the other hand, the existence of a court order establishing that Spear could not legally comply with the order of the children's court was, even without additional evidence, sufficient to establish a defense to the coercive sanction.

### D. Sufficiency of the Evidence

■ 41. Spear contends that there was insufficient evidence to justify the contempt sanctions because there was no evidence that he willfully or intentionally disobeyed the order of the children's court. Willfulness or intent, however, is not an element of a contempt action such as the one in this appeal. See State v. Wisniewski, 103 N.M. 430, 434–35, 708 P.2d 1031, 1035–36 (1985) (willfulness is not required to support a criminal contempt conviction); In re Hooker, 94 N.M. 798, 799, 617 P.2d 1313, 1314 (1980) (elements of civil contempt are knowledge of the court's order and an ability to comply). We recognize that some cases from this Court have stated that willfulness is an element of contempt, but in none of those cases has the issue been directly addressed (unlike Wisniewski), and it appears that the inclusion of intent as an element has been merely an oversight. See, e.g., State ex rel. Udall v. Wimberly, 118 N.M. 627, 631, 884 P.2d 518, 522 (Ct.App.1994) (reciting that the elements of contempt are knowledge of the order, ability to comply, and willful noncompliance); Rhinehart v. Nowlin, 111 N.M. 319, 326, 805 P.2d 88, 95 (Ct.App.1990) (same). Following our Supreme Court's precedent in Hooker and Wisniewski, we hold that willfulness or

intent is not an element of a civil contempt action. Consequently, Spear's argument concerning the lack of evidence of willfulness must fail.

### E. Abuse of Discretion in Imposing Contempt Sanctions

██ 42. Spear argues that, even if he was properly held in contempt of the order of the children's court, the court abused its discretion in the imposition of sanctions. Much of his argument is directed at the coercive $1500 per day sanction, which we have already addressed and reversed. Spear also argues, however, that the $25,000 compensatory fine should not have been imposed. Spear contends that, if attorney fees are awarded in a contempt case, they should be limited to the fees incurred to prosecute the contempt and should not include additional attorney fees such as the fund established in this case to allow the twins' New Mexico attorneys to pursue legal avenues leading to the twins' return. Spear relies on *Dial v. Dial,* 103 N.M. 133, 137, 703 P.2d 910, 914 (Ct.App.1985), in support of his proposition. That case, however, is distinguishable. In *Dial,* attorney fees were awarded for legal work that had no relation to the contempt proceedings or the damage caused by the contempt.

██ 43. Here, however, the attorney fees fund established by the children's court was intended to address and alleviate, if possible, the harm caused by Spear's contempt. Spear's act of taking the twins outside the jurisdiction of the children's court and failing to return them led to the tribal court judgment. That tribal court action caused the twins to remain outside New Mexico, and the only possible way to legally return them is through an action in federal court. In addition to the recovery of fees and costs incurred or to be incurred in prosecuting a contempt of court charge, the complainant in a civil contempt case is also entitled to recover damages caused by the contemptuous act. If those damages include attorney fees for defending (or, by logical extension, prosecuting) a different action, those attorney fees are recoverable as well. *See El Paso Prod. Co.,* 116 N.M. at 592–93, 866 P.2d at 320–21.

44. That is precisely the situation here. Spear's contempt has necessitated legal action to attempt to vindicate the jurisdiction and control of the children's court over the twins. The lawsuit will require attorney time and effort. By setting up the $25,000 fund to pay for that time and effort, the children's court was attempting to redress the harm caused by the contemptuous act of failing to return the twins to New Mexico. We thus find no abuse of discretion, especially since any unexpended portions of the $25,000 fund are to be returned to Spear at the close of whatever litigation might occur.

45. We emphasize that, by affirming the contempt order, we are not sanctioning unnecessary or frivolous litigation, or litigation that is not in the best interests of the twins. The duty of the twins' New Mexico attorneys is to act in the twins' best interests, and it may be that those best interests will not be served by a protracted battle in federal court that keeps their status unclear. Additionally, the Cherokee tribal court has now clearly indicated that it would accept a transfer from the children's court and in fact has demanded such a transfer. The Cherokee Nation and the twins' mother have requested such a transfer, which is required in the absence of good cause to the contrary. *See* 25 U.S.C.S. § 1911(b). It is possible that the most expeditious manner of handling this dispute would be to hold a transfer hearing in the children's court, before deciding whether a federal lawsuit is warranted.

### F. Recognition of Cherokee Tribal Court's Judgment

46. Spear raises three interrelated arguments. He argues that the tribal court judgment is valid, that the contempt proceedings are an unacceptable collateral attack on that judgment, and that the judgment is entitled to recognition under the full-faith-and-credit provision of the ICWA, as well as the Child Custody Jurisdiction Act, NMSA 1978, Sections 41–10–1 to –24 (Repl.Pamp.1994). However, the questions of the validity or propriety of the tribal court judgment, and thus whether that judgment is entitled to recognition in New Mexico, are not relevant to the resolution of the issues in this appeal.

47. The order of the children's court was a valid exercise of its own authority, and Spear was required to obey it until it was reversed, amended, or vacated by the children's court or a court with the authority to take such action. *See Purpura v. Purpura,* 115 N.M. 80, 84, 847 P.2d 314, 318 (Ct.App.), *cert. denied,* 115 N.M. 79, 847 P.2d 313 (1993). The only issues in this case are whether Spear did obey the order, whether he had a legally acceptable reason for not obeying it, and whether the sanctions imposed by the children's court were proper. The validity and enforceability of the later tribal court orders are issues separate from the question of the imposition of sanctions for the act that deprived the New Mexico children's court of any meaningful authority over the twins.

48. To the extent that these arguments may be construed as a contention that the children's court should have honored the tribal court's "dismissal" of the New Mexico case, we reject that argument as well. We have previously addressed the reasons why the tribal court had no authority to dismiss the pending New Mexico action. Additionally, neither the full-faith-and-credit principle nor the concept of comity requires recognition of an attempt by one court to abate or stay proceedings in a different court. *See Casale v. Casale,* 61 Ohio App.3d 118, 572 N.E.2d 192, 194 (1989) (Ohio court could proceed with case despite a New Jersey court order staying all actions in other jurisdictions); *James v. Grand Trunk W. R.R.,* 14 Ill.2d 356, 152 N.E.2d 858, 862 (Illinois court not required by comity or full-faith-and-credit to recognize out-of-state injunction purporting to enjoin litigants from pursuing Illinois action), *cert. denied,* 358 U.S. 915, 79 S.Ct. 288, 3 L.Ed.2d 239 (1958); *see also Navajo Nation v. District Court for Utah County,* 624 F.Supp. 130, 136 (D.Utah 1985) (ICWA does not require that judicial proceedings of Indian tribe be accorded greater weight than state's proceedings, in a case in which state had begun proceedings many months before tribal court did so), *aff'd,* 831 F.2d 929 (10th Cir.1987).

### G. Issues Answered Summarily

49. Spear argues that the children's court was not following the mandate that this Court issued in the prior appeal. Spear presented this same argument to the Supreme Court in his habeas corpus petition, and the Supreme Court rejected it. We are bound by the Supreme Court's decision. *See Alexander v. Delgado,* 84 N.M. 717, 718, 507 P.2d 778, 779 (1973) (Court of Appeals is bound by Supreme Court precedent).

50. Spear contends that the children's court abused its discretion in allowing the attorneys appointed to represent the twins to continue to represent them. One of the orders issued by the tribal court purported to discharge the attorneys from such representation. The attorneys, however, had been appointed by the children's court to represent the twins in the New Mexico action, and the tribal court had no power to discharge the attorneys from their New Mexico obligations, just as it had no authority to dismiss the New Mexico proceedings.

### III. CONCLUSION

51. As we have already carefully noted, this appeal does not involve the merits of the respective decisions made by the children's court or the Cherokee tribal court. Similarly, this opinion does not attempt to resolve the jurisdictional questions concerning the validity of the tribal court's judgment or of any continuing proceedings in the children's court. Instead, we have dealt only with the issues of the jurisdiction of the children's court to enter its August 1993 order, the disobedience of that order, and the consequences of that disobedience. We affirm the $25,000 compensatory fine imposed by the children's court and reverse the $1500 per day fine imposed as a coercive sanction.

52. **IT IS SO ORDERED.**

BOSSON and BUSTAMANTE, JJ., concur.