10 P.3d 191

2000-NMCA-079

STATE of New Mexico, ex rel. CHILDREN, YOUTH AND FAMILIES DEPARTMENT, Petitioner–Appellee,

v.

In the Matter of ANDREA Lynn M., a child, and Concerning Adrian M., Respondent–Appellant,

and

the Navajo Nation, Intervenor.

No. 20,405.

Court of Appeals of New Mexico.

Aug. 4, 2000.

**514**

Angela L. Adams, Chief Children's Court Attorney, Rebecca J. Liggett, Children's Court Attorney, Children, Youth & Families Dep't, Santa Fe, NM, for Appellee.

Robert Waterworth, Nancy L. Simmons, Law Offices of Nancy L. Simmons, Albuquerque, NM, for Appellant.

Levon B. Henry, Attorney General, Thomas W. Christie, Assistant Attorney General, Joseph Borrack, The Navajo Nation, Department of Justice, Window Rock, AZ, for Intervenor.

*OPINION*

WECHSLER, Judge.

{1} Appellant Adrian M. (Father), appeals the children's court order transferring jurisdiction and legal custody of Andrea M. (Child) to the Navajo Nation Family Court. Father argues on appeal that the transfer of jurisdiction was improper under the transfer provision of the Indian Child Welfare Act, 25 U.S.C. § 1911(b) (1983) (ICWA), because he objected to the transfer and because good cause existed for the children's court to retain jurisdiction. We affirm the children's court transfer because we cannot apply Section 1911(b) to the record in this case and because the transfer accomplishes the intent of ICWA.

*Facts and Procedural History*

{2} In May 1996, the Children, Youth and Families Department (the Department) filed an abuse and neglect petition on behalf of Child against Mother and Father, enrolled members of the Navajo Nation then living in Albuquerque. The petition alleged that Child had been sexually abused. In June 1996, after a custody hearing, the children's court ordered that Child be placed in the legal custody of the Department. In the same order, the court stated that Child was subject to ICWA and that the Department had notified the Navajo Nation of the custody proceedings. The court also stated that Child was to be placed in a Navajo foster home within a few days of the order placing custody of Child with the Department. Thereafter, in September 1996, the children's court entered a stipulated judgment and disposition awarding legal custody of Child to the Department for a period of two years and noting that Child had been placed with a Native American family.

{3} In June 1997, the Navajo Nation filed a motion to intervene in the children's court proceeding. The Navajo Nation asserted that Child was an Indian child and that the Navajo Nation was Child's "tribe" within the meaning of ICWA. *See* 25 U.S.C. § 1903. The Navajo Nation asserted that under ICWA, the Navajo Nation had the right to intervene in the proceeding. *See* 25 U.S.C.

§ 1911(c). The children's court granted the Navajo Nation's motion to intervene.

{4} In August 1998, the Navajo Nation filed a motion to transfer the case to the Navajo Nation Family Court. The Department, the guardian ad litem, and Father opposed the motion to transfer. In its response to the Navajo Nation's motion to transfer, the Department agreed with the Navajo Nation that by the time of the motion to transfer, Mother lived in Crownpoint, New Mexico, and Father lived in Thoreau, New Mexico. The children's court initially declined to transfer the case and stated:

> It seems to me that a smooth transition of this Child into the Tribe's custody is in her best interests. I am therefore, at this time, not ready to relinquish this court's jurisdiction of [Child] to the Tribe. I wish to allow the motion to remain open.

The court reasoned that an abrupt change in circumstances would not serve the best interests of Child.

{5} In February 1999, the Department filed a motion for consideration of the Navajo Nation's treatment plan. The Department's motion stated that the Department now supported the Navajo Nation's motion to transfer after having considered the Navajo Nation's family treatment plan. At the hearing on the Department's motion, Father's counsel advised the court for the first time that Father objected to the transfer under Section 1911(b). Father's counsel expressed Father's concern about how the Navajo Nation Family Court would handle enforcing his visitation rights and to whom the Navajo Nation Family Court would likely award custody of Child. Notwithstanding Father's objection, the children's court granted the motion to transfer because the transfer was in the best interests of Child.

*Applicability of Section 1911 of the Indian Child Welfare Act to the Transfer of Jurisdiction*

{6} In promoting the policy of protecting the best interests of Indian children and the stability of Indian tribes, ICWA provides for a dual jurisdictional scheme under which, based upon the Indian child's domicile or residence, jurisdiction over Indi-

an child custody proceedings lies either exclusively with the tribe or concurrently with both the state and tribe, depending upon the Indian child's domicile or residence. *See* 25 U.S.C. § 1911(a) & (b); *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 36, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). If the Indian child resides or is domiciled within the reservation of the child's tribe, jurisdiction over child custody proceedings is exclusively vested in the tribe. *See* 25 U.S.C. § 1911(a). If, on the other hand, the Indian child does not reside or is not domiciled on the tribe's reservation, the tribe and the state share concurrent jurisdiction over child custody proceedings. *See* 25 U.S.C. § 1911(b); *Holyfield,* 490 U.S. at 36, 109 S.Ct. 1597 (stating that although states and tribes share concurrent jurisdiction under Section 1911(b), such concurrent jurisdiction is presumptively tribal jurisdiction). Section 1911(a) and (b) provide:

> (a) Exclusive jurisdiction
>
> An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe. . . .
>
> (b) Transfer of proceedings; declination by tribal court
>
> In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided,* That such transfer shall be subject to declination by the tribal court of such tribe.

It is quite clear that in custody disputes to which ICWA is applicable, factual inquiry as to domicile and residency of the child is essential in order to apply Section 1911(a) or (b).

{7} In this case, none of the parties presented evidence demonstrating the residence or domicile of Child at any point in

the proceedings, nor did any of the parties request findings of fact on the issue. Accordingly, no such findings were entered by the children's court. As an appellate court, we cannot determine fact-intensive issues such as domicile because fact finding is a function of the trial court. *See Pinnell v. Board of County Comm'rs*, 1999–NMCA–074, ¶ 14, 127 N.M. 452, 982 P.2d 503; *State v. Franks*, 119 N.M. 174, 177, 889 P.2d 209, 212 (Ct.App.1994); *see also In re Begay*, 107 N.M. 810, 813, 765 P.2d 1178, 1181 (Ct.App. 1988) (recognizing factual components of a finding of domicile). The lack of evidence of Child's residence or domicile makes it impossible to determine whether Section 1911(b) applies. That Section relates only to an "Indian child not domiciled or residing within the reservation of the Indian child's tribe." In the absence of evidence in the record to the contrary, we assume the record supports the ruling of the lower court. *See Reeves v. Wimberly*, 107 N.M. 231, 236, 755 P.2d 75, 80 (Ct.App.1988) ("Upon a doubtful or deficient record, every presumption is indulged in favor of the correctness and regularity of the trial court's decision, and the appellate court will indulge in reasonable presumptions in support of the order entered.").

{8} More significantly, the children's court's transfer follows the congressional intent underlying ICWA. When enacting ICWA, Congress declared that the policy promoted by the Act was "to protect the best interests of Indian children and to promote the stability and security of Indian tribes." 25 U.S.C. § 1902. Congress enacted ICWA to remedy the difficulties arising from state-facilitated proceedings that often resulted in the removal of Indian children from their homes with little or no consideration of an Indian child's cultural heritage or the tribe's interest in the removal of Indian children from their Indian homes. *See* 25 U.S.C. § 1901; *see also Holyfield*, 490 U.S. at 37, 109 S.Ct. 1597 (stating that ICWA " 'seeks to protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society' " (quoting H.R.Rep. No. 95–1386, at 23 (1978))); 25 U.S.C. § 1901(5) ("[T]he States, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families."). ICWA, therefore, contemplates transfer from state to tribal courts when Indian children, communities, and families are involved in custody proceedings.

{9} Mother, Father, and Child are all enrolled members of the Navajo Nation. At the time of the motion to transfer, Mother and Father were living within or in proximity to the boundaries of the Navajo Nation, or at the very least in Indian Country. *See* 25 U.S.C. § 1903(10) (stating that ICWA defines reservation using the definition in 18 U.S.C. § 1151 which defines Indian country to include lands within the boundary of a reservation as well as dependent Indian communities and lands held in trust); *see also In re Adoption of Baby Child*, 102 N.M. 735, 738, 700 P.2d 198, 201 (Ct.App.1985) (holding tribal court had exclusive jurisdiction over adoption proceeding when the record indicated that an illegitimate child's mother gave her residence as located on an Indian reservation and nothing in record indicated information to the contrary).

{10} The enrollment and location of the family members supports the children's court's transfer in light of the congressional intent of ICWA that bases jurisdiction upon tribal affiliation and location of the Indian child. Furthermore, the transfer addresses the Navajo Nation's interest in Navajo children whose parents are both tribal members, as contemplated by ICWA. The transfer is additionally supported considering ICWA's mandate to protect the best interests of Indian children, which includes being raised in surroundings that reflect the child's Indian heritage. Finally, considerations such as the accessibility of the forum and the convenience of the parties further support the transfer.

{11} Cases such as this one are moving targets for courts that retain jurisdiction in custody matters. The state children's court assumes jurisdiction at the outset and makes determinations regarding custody. Long pe-

riods of time pass, the parties move, and the Navajo Nation takes a strong interest in the custody issue. In this case, circumstances had significantly changed, and the children's court was asked to transfer the matter to the jurisdiction of the Navajo Nation. If the parents, both enrolled members of the Navajo Nation and both living in Indian Country, are unwilling or otherwise uninterested in specifically testing the legal authority of the court to transfer jurisdiction on account of strict domiciliary requirements, we believe that a proper disposition of a transfer issue can well be for the children's court to act as it did in this case, namely, in accordance with what the court determined was in the best interests of this child. Certainly, as we have stressed above, the children's court's actions were entirely consistent with Congress's policy in enacting ICWA.

{12} Father also argues that Section 1911(b) exclusively governs the ability of the children's court to transfer the case to the Navajo Nation, and Father emphasizes that Section 1911(b) appears to give either parent an absolute veto over transfer to tribal court. *See* § 1911(b) ("The court ... shall transfer ... absent objection by either parent."). However, Section 1911(b) does not contemplate the circumstances before the children's court when it transferred this case to the Navajo Nation. As discussed above, Section 1911(b) addresses only those situations in which an Indian child is domiciled and is residing outside the child's reservation. In this case, the record is silent about Child's domicile at any stage in the proceedings, and Father, who bore the burden of persuasion in opposing the transfer, failed to demonstrate to the children's court the importance of a finding of domicile for the proper application of Section 1911(b). The fact that Father somewhat ambiguously objected to the transfer of the proceedings in this case does not, in our opinion, draw us into Section 1911(b).

{13} We do agree with Father that once proper jurisdiction has attached, a court cannot subsequently be divested of its jurisdiction by the actions of the parties. *See Spear v. McDermott,* 121 N.M. 609, 616, 916 P.2d 228, 235 (Ct.App.1996); *see also Holy-*

*field,* 490 U.S. at 49, 109 S.Ct. 1597 (stating that exclusive tribal jurisdiction was not "meant to be defeated by the actions" of the parties). In *Spear,* the grandparents and mother of an Indian child took the child to the Cherokee reservation in Oklahoma under the pretense that they would return the child within a week. *See id.* at 613, 916 P.2d at 232. When they arrived within the reservation, the grandparents and mother sought a custody disposition from the tribal court. *See id.* After the New Mexico court held grandparents in contempt for failing to return the child to New Mexico, this Court held on appeal that the grandparents' removal of the child from New Mexico and the tribal court orders awarding custody could not defeat the jurisdiction of the New Mexico court. *See id.* at 615–17, 916 P.2d at 234–36.

{14} Unlike the parties in *Spear,* Mother did not seek a custody order from the Navajo Nation Family Court while the case was still in the state children's court in an effort to divest the children's court of jurisdiction. Nor does the record indicate Mother moved to Indian Country for the sole purpose of divesting the children's court of jurisdiction. Rather, after Mother's return to Indian Country, Mother continued to participate in the proceedings in the state children's court and by all indications continued to perform the obligations imposed upon her by the children's court.

{15} Additionally, the children's court was not facilitating a divestiture of its jurisdiction by an act of Mother. The court willingly transferred the case upon motion of the Navajo Nation nearly three years after the initiation of the abuse and neglect proceeding, after the parties changed their circumstances and after the court again had the opportunity to consider the best interests of Child. At the time of transfer, the residence of Mother and Father provided the children's court with substantial reasons for the court to exercise its inherent discretion to transfer, regardless of whether jurisdiction was initially properly established in the children's court under Section 1911(a) and (b). This case, therefore, does not present the question of whether Mother could divest the children's court of its jurisdiction by returning to the

**518**

jurisdictional boundaries of the Navajo reservation, as was the situation in *Spear.*

*Applicability of New Mexico Statute*

 {16} Father raised NMSA 1978, § 32A–1–9(D) (1999) for the first time on appeal in a supplement to his reply brief. Section 32A–1–9(D) bars a transfer of jurisdiction to tribal court over a parent's objection. We refuse to apply this statute to the issues in this appeal because the statute was never raised below and, therefore, the issue has not been properly preserved. *See Rivera v. Trujillo,* 1999–NMCA–129, ¶ 15, 128 N.M. 106, 990 P.2d 219; *City of Carlsbad v. Grace,* 1998–NMCA–144, ¶ 15, 126 N.M. 95, 966 P.2d 1178.

*Conclusion*

{17} For the reasons stated above, we affirm the transfer of jurisdiction to the Navajo Nation Family Court.

{18} **IT IS SO ORDERED.**

BOSSON and SUTIN, JJ., concur.