1998-NMCA-144

966 P.2d 1178

**CITY OF CARLSBAD, a New Mexico Municipal Corporation, Plaintiff–Appellee,**

v.

**Corinne B. GRACE, d/b/a Grace Oil Company, Defendant–Appellant.**

**No. 18847.**

Court of Appeals of New Mexico.

Sept. 24, 1998.

Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, NM, for appellee.

Joel M. Carson, Losee, Carson, Haas & Carroll, P.A., Artesia, NM, for appellant.

## OPINION

PICKARD, J.

{1} The City of Carlsbad (City) filed this action for declaratory judgment asking the district court to determine whether Grace Oil Company (Grace) was entitled to recover overpayment of royalties made to the City during a sixteen-year period. The trial court granted summary judgment in favor of the City. On appeal, we consider three issues: (1) whether the statute of limitations bars an action by Grace against the City to recover overpayment of royalties made during a sixteen-year period; (2) whether Grace may invoke the doctrine of equitable recoupment to recover overpayments made to the City notwithstanding the statute of limitations; and (3) assuming Grace may recover, whether Grace is entitled to receive prejudgment interest pursuant to NMSA 1978, § 56–8–3 (1983). We affirm in part, reverse in part, and remand.

## FACTS

{2} The City entered into a lease with Grace which allowed the oil company to explore and develop oil and gas wells on a proration unit that included land belonging to the City. In exchange, Grace would market the gas and pay royalties for gas produced and sold from the land. Due to an accounting error, Grace overpaid royalties to the City from 1974 until 1990. When Grace discovered its error in 1990, it immediately contacted the City, advised it of the overpayments, and demanded repayment. Grace then began to withhold all royalty payments to the City to apply against the overpayment balance. Grace continued to withhold payments for approximately two and a half years, claiming that it was entitled to do so until all overpayment plus interest had been repaid.

{3} In 1992, the City filed a petition for declaratory judgment. The City asked the trial court to determine whether Grace was entitled to withhold royalty payments until the amount of the overpayment plus interest had been repaid. The City also contended that Grace's claim for repayment was barred by the three-year statute of limitations provided for in NMSA 1978, § 37–1–24 (1941). In response, Grace argued that even if the statute of limitations barred a suit to recover the overpayments, the statute would not bar a defense of recoupment to the City's claim. The trial court granted summary judgment in favor of the City, finding that although Grace made a good-faith error in calculation, it was barred by the statute of limitations for asserting any claim for overpayment. The court ordered Grace to commence making royalty payments to the City; however, Grace was not required to repay the City for the amounts which it had already recouped. The City does not appeal the latter decision. Grace appeals, claiming that the limitations period did not expire and if it had, that under equitable recoupment, Grace is entitled to recover the remaining overpayment plus all accrued interest.

## DISCUSSION

### I. Statute of Limitations

{4} The City asked the district court to determine whether the statute of limitations, Section 37–1–24, barred a claim by Grace to recover overpayment of royalties made to the City. Section 37–1–24 provides that:

No suit, action or proceeding at law or equity, for the recovery of judgment upon, or the enforcement or collection of any sum of money claimed due from any city,

town or village in this state, or from any officer as such of any such city, town or village in this state, arising out of or founded upon any ordinance, trust relation or contract written or unwritten, or any appropriation of or conversion of any real or personal property, shall be commenced except within three years next after the date of the act of omission or commission giving rise to the cause of action, suit or proceeding.... All such suits, proceedings or actions not so commenced shall be forever barred....

Grace asserts several arguments in support of its position that the statute of limitations does not bar its claim for recovery of overpayments. We examine each of these arguments.

### A. Mistake

{5} Grace contends that its claim is not barred because the statute of limitations did not begin to run until 1990 when Grace discovered the error in payment. Therefore, Grace explains, because this suit was filed in 1992, Grace's claim for repayment is not time barred. Grace refers our attention to NMSA 1978, § 37–1–7 (1880), which states:

In actions for relief, on the ground of fraud or mistake, and in actions for injuries to, or conversion of property, the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved.

{6} In *Roscoe v. U.S. Life Title Insurance Co.*, 105 N.M. 589, 591, 734 P.2d 1272, 1274 (1987), the Supreme Court stated that Section 37–1–7 did not toll the statute of limitations due to one party's mistake. In *Roscoe*, eight years after the appellants entered into a real estate purchase agreement, they discovered that a balloon payment in their mortgage contract was due. *See id.* at 590, 734 P.2d at 1273. The appellants filed a complaint after the statute of limitations had already run. *See id.* The appellants argued that Section 37–1–7 tolled the statute of limitations; however, the Supreme Court disagreed with the appellants' position. The Court stated that it was the appellants' responsibility to familiarize themselves with the terms of the agreement that they entered into and their failure to do so exhibited a lack of reasonable diligence. *See id.* at 591, 734 P.2d at 1274.

{7} Likewise, in this case, it was Grace's responsibility to ensure that it correctly remitted payments to the City. For sixteen years Grace failed to discover its error. Furthermore, as conceded during oral argument by Grace's counsel, the error was discoverable. If Grace had examined its accounting records during the sixteen-year period, Grace could have discovered the miscalculation. *See Ambassador E. Apts., Investors v. Ambassador E. Invs.*, 106 N.M. 534, 536, 746 P.2d 163, 165 (Ct. App.1987) (statute of limitations begins to run on date that party had actual knowledge of fraud or on the date when the party, through the exercise of reasonable diligence, should have discovered the fraud); *Bassett v. Bassett*, 110 N.M. 559, 563, 798 P.2d 160, 164 (1990) (stating that party could not have possibly discovered the fraud until after the statute of limitations had run).

{8} In this case, Grace asserts no reason for its failure to discover the accounting error other than that its practice is not to check on past payments. Thus, because the party claiming that the statute of limitations should be tolled has the burden of setting forth sufficient facts to support its position, *see Roscoe*, 105 N.M. at 590, 734 P.2d at 1273, and because Grace has not alleged sufficient facts to excuse its lack of diligence, we hold that Section 37–1–7 did not toll the statute of limitations in this case.

{9} Additionally, Grace appears to argue that Section 37–1–24 does not apply because there was no act of commission or omission by the City to trigger the running of the statute. We disagree with Grace's characterization. The act of commission by the City is accepting overpayment of royalties. Furthermore, the act of commission mentioned in the statute could also apply to Grace's actions.

## B. Open Account

{10} Grace's next argument is that the statute of limitations will not begin to run until three years after it ceases to operate the gas well and the accounts between the City and Grace are reconciled. Grace explains that this is because the selling of gas and the payment of royalties involves a series of payments and adjustments similar to the debits and credits of an open account. Therefore, "[w]hen there is an open current account the cause of action shall be deemed to have accrued upon the date of the last item therein, as proved on the trial." NMSA 1978, § 37-1-6 (1880).

{11} An open account is defined as:
[A]n account usually and properly kept in writing, wherein are set down by express or implied agreement of the parties concerned a connected series of debit and credit entries of reciprocal charges and allowances, and where the parties intend that the individual items of the account shall not be considered independently, but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account, and where, pursuant to the original, express, or implied intention, there is to be but one single and indivisible liability arising from such series of related and reciprocal debits and credits, which liability is to be fixed on the one party or the other, as the balance shall indicate at the time of settlement or following the last pertinent entry of the account.
*Gentry v. Gentry*, 59 N.M. 395, 398, 285 P.2d 503, 505–06 (1955). In *Southern Union Exploration Co. v. Wynn Exploration Co.*, 95 N.M. 594, 603, 624 P.2d 536, 545 (Ct.App. 1981), we held that an open account did not exist where the parties entered into a contract which provided for a fixed duration and which contemplated monthly billings and payments as opposed to a single and indivisible liability.

{12} In this case, the course of conduct between the parties indicated that royalties were to be calculated and paid on a monthly basis, and the lease provided that the parties' agreement shall continue for a period of five years or so long as oil or gas is being produced on the land. These terms of usage in the contract are contrary to the language in *Gentry* that an open account continues until *either* party wishes to close and settle the account. So long as Grace was producing oil or gas on the land, the City could not at its convenience seek to reconcile the account. Thus, we reject Grace's argument that the account in this case was an open account.

## C. Notification

{13} Grace next claims that the limitations period did not begin to run until the City notified Grace that it disputed the claim for repayment. Grace explains that this is because the act giving rise to this suit occurred in 1991 when the City rejected a standstill agreement that was in place while the City verified Grace's accounting. Thus, because this case was brought in 1992, Grace contends that the suit is timely. We have previously discussed that the act giving rise to Grace's claim was the overpayment of royalties and the City's acceptance of that amount. The repudiation of the 1991 standstill agreement did not trigger the running of the limitations period because that period had already commenced.

{14} Alternatively, Grace argues that each monthly payment constitutes a separate act and the statute should be calculated as expiring three years from the date of each payment, and not three years from the initial accounting error in 1974. This argument is more persuasive, and it would allow Grace to assert a claim for repayment for each monthly overpayment for the three years preceding the filing of the suit. *See Tull v. City of Albuquerque*, 120 N.M. 829, 830–31, 907 P.2d 1010, 1011–12 (Ct.App.1995) (rejecting "continuing-wrong" theory in context of breach of employment contract where it is important to have timely suit so that evidence of circumstances of breach is fresh, but appearing to allow such a theory in context of other contracts that call for periodic payments); *cf. Plaatje v. Plaatje*, 95 N.M. 789, 790–91, 626 P.2d 1286, 1287–88 (1981) (statute of limita-

tions on suit to divide retirement benefits not divided at divorce runs from the date each installment is due).

{15} Nonetheless, as the City argues, Grace did not preserve this argument below and is asserting it for the first time on appeal. Grace did not respond to the City's preservation challenge in its reply brief. In oral argument, however, Grace's counsel referred our attention to a memorandum in opposition to the City's motion for summary judgment which was submitted to the trial court by Grace. In the memorandum, Grace's counsel wrote, "If there was an overpayment in 1989, for example, and a recoupment in 1989, should the recoupment go back three years or should it apply against 1989 income? We are willing to face these issues on appeal." Grace claims that this oblique reference was sufficient to preserve the argument now asserted on appeal. We disagree. "In our view, the important purposes of the preservation requirement—(1) to alert the district court to the error so that it may be corrected and (2) to give the opposing party a fair opportunity to respond—were not met." *Kennedy v. Dexter Consol. Schs.*, 1998–NMCA–051, ¶ 27, 124 N.M. 764, 955 P.2d 693, *cert. granted*, No. 24,988 (1998); *see also Woolwine v. Furr's Inc.*, 106 N.M. 492, 496, 745 P.2d 717, 721 (Ct.App.1987) ("Where the record fails to indicate that an argument was presented to the court below, unless it is jurisdictional in nature, it will not be considered on appeal."). Grace's reference to a hypothetical question regarding 1989 and a willingness "to face these issues on appeal" was not specific enough to alert the trial court to the nature of the argument now asserted on appeal. Therefore, Grace has failed to preserve its claim that it could recover for the three years preceding the filing of suit. Additionally, to the extent that Grace contends that this theory would allow it to recover for three years preceding the discovery of the error, the authorities relied on do not support that particular claim.

## II. Recoupment

### A. Section 37–1–15

{16} Grace argues that if its claim for repayment is barred by the statute of limitations, Grace should be allowed to recover overpayments from the City under the doctrine of equitable recoupment. Equitable recoupment is a "judicial doctrine developed to avoid the inequity that would otherwise result from strict adherence to statutes of limitations." James E. Tierney, *Equitable Recoupment Revisited: The Scope of the Doctrine in Federal Tax Cases After United States v. Dalm*, 80 Ky.L.J. 95, 103 (1991–92). Equitable recoupment allows a party to use a claim barred by the limitations period as a defense to another party's timely claim where the two claims arise out of the same transaction or event. *See id.* at 101–02; *see also Smith v. United States*, 373 F.2d 419, 422 (4th Cir.1966).

{17} The City objects and contends that NMSA 1978, § 37–1–15 (1880), which exempts setoffs or counterclaims from the operation of certain statutes of limitation, does not allow Grace to bypass the limitations period. Section 37–1–15 provides that:

> A setoff or counterclaim may be pleaded as a defense to any cause of action, *notwithstanding such setoff or counterclaim may be barred by the preceding provisions of this chapter*, if such setoff or counterclaim so pleaded was the property or right of the party pleading the same at the time it became barred and at the time of the commencement of the action, and the same was not barred at the time the cause of action sued for accrued or originated; but no judgment for any excess of such setoff or counterclaim over the demand of the plaintiff as proved shall be rendered in favor of the defendant.

(Emphasis added.) The City explains that the phrase "preceding provisions of this chapter" in Section 37–1–15 means that if a claim is barred by succeeding provisions of the chapter or later enacted statutes, the statutory right of recoupment is not allowed. According to the City, Section 37–1–15 would allow recoupment only in cases that are barred by NMSA 1978, §§ 37–1–1 to –14 (1880, as amended through 1983). We disagree.

{18} In the first place, "this chapter" does not refer to the numerical compilation

assigned by the publisher of the statutes. *See* "Compiler's notes" and "Meaning of 'this chapter' " in the annotations to Section 37–1–15. More importantly, the statute refers to "setoff or counterclaim," which are recognized to be different from recoupment. *See Developments in the Law—Statutes of Limitations,* 63 Harv.L.Rev. 1177, 1245–46 (1950) (hereinafter "*Developments* ").

{19} The case cited by the City for support also involves a statute that is distinguishable from Section 37–1–15. In *Howell v. Burk,* 90 N.M. 688, 695, 568 P.2d 214, 221 (Ct.App.1977), a statute, which stated that it extended the time in which to bring an action under "the preceding provisions of this chapter" in favor of minors, did not apply to a suit brought under a statute that was not a part of "this chapter." The statute at issue in *Howell,* however, Section 37–1–10, was a positive statute, intended to extend certain, but not other, statutes of limitations. *See id.* ("The times limited for the bringing of actions by the preceding provisions of this chapter shall, in favor of minors ... be extended...."). Section 37–1–15 is not written in the same format.

{20} Section 37–1–15 does not clearly limit setoff or counterclaim *only* to actions which are brought under the provisions of the chapter dealing with general statutes of limitations. Thus, because the statute does not clearly limit its application, Section 37–1–15 could also be interpreted to allow recoupment as a defense in actions which are otherwise barred by other statutes of limitations as long as the special requirements of recoupment are met.

{21} Therefore, we hold that Section 37–1–15 does not prohibit a party from asserting the defense of recoupment even if that party would be barred from bringing an action for affirmative relief under Section 37–1–24. Equitable recoupment allows a party to assert a defense even though the statute of limitations has run on an action for affirmative relief. The goal is to prevent the unjust enrichment of one party due to another's mistake and to bypass the harsh application of the procedural bar of the running of the limitations period. A holding that the statute of limitations bars a recoupment defense,

particularly in the absence of clear legislative intent, would be contrary to the doctrine of recoupment. *See Midlantic Nat'l Bank v. Georgian, Ltd.,* 233 N.J.Super. 621, 559 A.2d 872, 874 (N.J.Super.Ct.Law Div.1989) ("Recoupment is never barred as a defense by the statute of limitations so long as the main action is timely.").

### B. Section 37–1–24

{22} Section 37–1–24 bars a party from bringing a suit for affirmative relief after the three-year limitation period provided therein has run. Section 37–1–24 is a strong statute in that it bars claims at law or equity. The statute intends to protect cities, villages, and towns from certain stale claims brought many years after the statute of limitations has expired. *See Garcia v. LaFarge,* 119 N.M. 532, 537, 893 P.2d 428, 433 (1995) ("The purpose of a statute of limitations is to protect prospective defendants from the burden of defending against stale claims while providing an adequate period of time for a person of ordinary diligence to pursue lawful claims.").

{23} The City argues that Grace is clearly prohibited under Section 37–1–24 from bringing suit against it to recover the overpayment of royalties. The City is correct insofar that it argues that Grace may not raise this action as a sword against the City, but Grace may raise recoupment as a shield by asserting this doctrine as a defense. *See Midlantic Nat'l Bank,* 559 A.2d at 874. That is because:

> When considering the effect of the running of the statute of limitations this court is committed to the general doctrine, almost universally recognized by the courts and textwriters, that there is a substantial distinction between a claim asserted as a pure defense and one where affirmative relief is sought. Statutes of limitation are not intended to affect matters asserted strictly in the defense of an action.

*Rochester Am. Ins. Co. v. Cassell Truck Lines, Inc.,* 195 Kan. 51, 402 P.2d 782, 786 (Kan.1965). Thus, although Section 37–1–24 bars claims for affirmative relief in law or equity, Grace is still allowed to assert the

defense of equitable recoupment to reduce or extinguish a money judgment in the City's favor. *See Developments, supra,* at 1245 ("Although not independently actionable, a claim may be used to defeat an action brought by the person in whose favor the bar exists, even where the statute of limitations would seem to prohibit the defense. Thus, if the basis of the claim will establish a denial that the plaintiff's cause of action exists at all, the claim may be asserted despite the expiration of the limitations period.") (footnote omitted).

{24} Additionally, Grace has brought to our attention several cases in which courts have allowed equitable recoupment as a defense in oil and gas cases. In *Shanbour v. Phillips 66 Natural Gas Co.,* 864 P.2d 815, 817 (Okla.1993), the Oklahoma Supreme Court, without much discussion, allowed an oil producer who had overpaid royalties to recoup the overpayments. Furthermore, in *Freston v. Gulf Oil Co.,* 565 P.2d 787, 788 (Utah 1977), plaintiffs sued the oil company for withholding payments from oil and gas production. The oil company had overpaid the plaintiffs, and the company withheld future payments in order to recover the overpayments. *See id.* The court noted that "[t]he action of [the oil company] was dictated by equity. It would be highly inequitable to allow plaintiffs to retain something that was not theirs." *Id.* at 789. Moreover, in *Waechter v. Amoco Production Co.,* 217 Kan. 489, 537 P.2d 228, 253 (Kan.1975), the Kansas Supreme Court determined whether an oil producer's "self-help action in making refund deductions from later royalty payments" after the limitations period on the company's cause of action for overpayment had expired was permissible. *Waechter* allowed an oil producing company to recoup royalties mistakenly paid in excess. *See id.* at 255, 256. *Waechter* relied on 3 Eugene Kuntz, *A Treatise on the Law of Oil and Gas* (A Revision of Thornton) § 42.8 (1967) (hereinafter Kuntz). *See Waechter,* 537 P.2d at 251–52. The current version of the Kuntz treatise states:

> If the right to recover overpayments is barred by [the statute of] limitations, the lessee may nevertheless retain any voluntary refunds of overpayments, may retain

funds in the form of authorized deductions from later royalty payments, and may withhold from future royalty the amount of overpayments made under the same lease. The lessor cannot require the lessee to return refunds voluntarily made or authorized, for the reason that the statute of limitations is a defense and cannot be used as an affirmative claim. The right of the lessee to withhold overpayment from future royalty is an exercise of the right of recoupment.

Kuntz, *supra,* § 42.8, at 446 (1989). Additionally, another treatise, 3 Howard R. Williams and Charles J. Meyers, *Oil and Gas Law* § 657 (1997), would allow a party to recoup overpayments in an oil and gas case:

> Where as a result of good-faith mistake royalty has been paid to a person not entitled to receive same or where excessive payments have been made in good faith, it is generally held that the lessee (or purchaser) who has made such payments may recover from the payee the payments to which he was not entitled.

{25} Thus, it appears to be universally recognized that equitable recoupment is allowed as a defense in oil and gas cases although the statute of limitation has expired. Nonetheless, although a party may assert equitable recoupment as a defense, the question is whether in this case the equities favor allowing a party, such as Grace, to utilize this doctrine. "Equitable recoupment is an equity doctrine, and fairness to the parties is an important consideration in the application of equitable principles." *Wilmington Trust Co. v. United States,* 221 Ct. Cl. 686, 610 F.2d 703, 714 (Ct.Cl.1979). We are aware that our decision to permit examination of the equities surrounding the parties' actions might appear inconsistent with our holding in *Teco Investments, Inc. v. Taxation & Revenue Dep't,* 1998-NMCA-055, 125 N.M. 103, 957 P.2d 532. In *Teco,* this Court addressed the doctrine of equitable recoupment in a tax case where two taxes were paid on an inconsistent basis. We set forth the three conditions of equitable recoupment in a tax case and stated that the consideration of additional equitable factors was inappropriate because the three conditions subsumed

all generally accepted equitable factors in tax cases. *See id.* ¶ 21.

{26}   In contrast to tax cases, there is no well-defined test that sets forth the relevant equitable factors in an oil and gas recoupment case.   Therefore, *Teco* does not preclude use from considering various equitable factors in deciding whether to allow recoupment.   Our decision is supported by the Kuntz treatise and a case cited by Grace. Kuntz appears to suggest that the court may consider equitable factors in deciding whether to allow recoupment:

> If the lessee or the purchaser of royalty oil or royalty gas should overpay a lessor or should make payment to a person not entitled to receive such payment, such lessee or purchaser *may or may not be entitled to a refund* of the amount erroneously paid, *depending upon the circumstances* of the payment.

Kuntz, *supra*, § 42.8, at 444 (emphasis added).   This argument would be in accord with *Freston*, which specifically considered equitable factors. *See Freston*, 565 P.2d at 788–89. *Freston* considered, and ultimately rejected, the plaintiffs' argument that defendant should not have been allowed to recoup the overpayments because the plaintiffs would be prejudiced. *See id.* at 789.   The plaintiffs argued that they had already spent the money received and would face increased tax liabilities and a substantial change of circumstances if the defendant was allowed to recoup. *See id.* at 788.   The court rejected that argument because the defendant did not seek to recover money the plaintiffs had already been paid, but merely looked to future proceeds of the lease for recoupment. *See id.*   Arguably, *Freston* might have had a different outcome if the plaintiffs were a city or state entity, and not private individuals. In that event, equitable considerations of whether the city relied on future payments for its budget might have swayed the court's decision.

{27}   We hold that in a recoupment case, where there is no well-established test setting forth the relevant equitable considerations as there is with tax cases, the lower court may consider various equitable factors in deciding whether to allow recoup-

ment.   In this case, due to the trial court's ruling on summary judgment, the trial court did not weigh the countervailing equities, nor did the parties offer any evidence to show that the equities weighed in their favor. Therefore, it is necessary to remand this case to allow the court to consider the equities and to allow the parties to present evidence on various factors.   Relevant factors which the court may consider include the strong policy in disfavoring stale claims against cities, towns, and villages;  the parties' diligence in discovering the accounting error;  Grace's accounting procedures;  the City's reliance on future royalty payments;  and its ability to withstand the reduction in future royalty payment after taking recoupment into consideration.   Thus, the Court will have to consider the dollar amounts involved and their practical consequences to the parties.

{28}   A final question on this issue, however, is raised by Grace's apparent request that we award affirmative relief and hold that it is entitled to withhold future royalty payments so as to recoup the remaining balance on the overpayments.   Thus, Grace, in effect, asks us to overturn the judgment to the extent that it requires Grace to begin paying the City its proportional share of the royalties effective as of the date of the hearing below.   We construe this portion of the judgment as saying nothing more than what the lease provides.   In other words, the order that Grace begin paying does not grant the City any more rights than it would have had if the suit had not been brought.

{29}   In this case, assuming that Grace's action was questionable in withholding royalty payments from the City for approximately two years insofar as the City is entitled to those payments pursuant to the statute of limitations, Grace can assert equitable recoupment as a defense.   However, Grace would only be entitled to recoup to the extent of any judgment rendered to the City. Any amount that Grace claims is still owing (above the judgment amount) would not be recoverable in this suit, which was brought before the entire amount was recouped. *See* Tierney, *supra*, at 126–27 ("[B]ecause equitable recoupment is in the nature of a defense, the doctrine does not lift the bar of the

statute of limitations to permit an affirmative recovery of the full amount of the barred claim; rather, it can be used only to 'reduce or wipe out the open claim, but no more' and 'merely operates as a diminution of . . . [the] right to recover on the open claim.' Otherwise, it would, in effect, permit the party asserting the barred claim full collection or recovery thereon, thereby completely undercutting the statute of limitations.") (footnote omitted); *see also Pennsylvania R. Co. v.. Miller*, 124 F.2d 160, 162 (5th Cir.1941) (stating that equitable recoupment "goes to the existence of plaintiff's claim, and is limited to the amount thereof"); *Dysart v. United States*, 169 Ct.Cl. 276, 340 F.2d 624, 626 (Ct.Cl.1965) (observing that where a refund of approximately $4,500 was sought, the government's setoff claim of $130,000 was "cognizable only to the extent of reducing the taxpayers' claim to zero"); *Christenson v. Akin*, 183 Kan. 207, 326 P.2d 313, 319 (Kan. 1958) ("Although defendants may be barred from affirmative relief because of limitations, they would seem to have a right to use their counterclaim as a matter of pure defense to reduce any judgment received by plaintiffs herein."). To the extent that Grace asks us to grant affirmative relief and rule that it is entitled to recover the amount it overpaid by deducting or withholding future royalty payments, this is not a defense. *See Estate of Mitchell v. United States*, 645 F.Supp. 274, 277 (S.D.Fla.1986) (mem.) (stating that party was "attempting to use recoupment not in its traditional form as a defense, but as an independent ground for overcoming the effect of the statute of limitations").

## IV. Interest

■ {30} Grace contends that if it is allowed to recover the overpayments made to the City, then it is also entitled to interest on that amount. The trial court found that although Grace was barred from collecting any overpayment of royalties, even if Grace had timely asserted a claim, NMSA 1978, § 56–8–4(D) (1993) did not allow Grace to collect prejudgment interest. Section 56–8–4 provides that:

A. Interest shall be allowed on judgments and decrees for the payment of money from entry. . . .

B. The court in its discretion may allow interest of up to ten percent from the date the complaint is served upon the defendant after considering among other things:

(1) if the plaintiff was the cause of unreasonable delay in the adjudication of the plaintiff's claims; and

(2) if the defendant had previously made a reasonable and timely offer of settlement to the plaintiff.

C. Nothing contained in this section shall affect the award of interest or the time from which interest is computed as otherwise permitted by statute or common law.

D. The state and its political subdivisions are exempt from the provisions of this section except as otherwise provided by statute or common law.

{31} If applicable, Section 56–8–4(D) would not allow Grace to recover interest on the overpayments against the City. Nonetheless, Grace argues that Section 56–8–3 is the applicable statute. Section 56–8–3 states that:

The rate of interest, in the absence of a written contract fixing a different rate, shall be not more than fifteen percent annually in the following cases:

A. on money due by contract;

B. on money received to the use of another and retained without the owner's consent expressed or implied; and

C. on money due upon the settlement of matured accounts from the day the balance is ascertained.

{32} Both Section 56–8–3 and Section 56–8–4 allow a party to recover prejudgment interest in certain situations. *See Sunwest Bank v. Colucci*, 117 N.M. 373, 377–79, 872 P.2d 346, 350–52 (1994). Yet, as Grace correctly notes, a political subdivision, such as the City, is exempted from paying prejudgment interest under Section 56–8–4, but not under Section 56–8–3. This is because the language in Section 56–8–4(D) only exempts the City from paying interest under "the provisions of this section"—Section 56–8–4. Interest payable under Section 56–8–3 is not

affected by the language in Section 56–8–4(D).

{33} Our decision that Section 56–8–3 governs whether Grace may recover prejudgment interest is also supported by the purposes served by each section. Section 56–8–4(B) allows prejudgment interest in the court's discretion "as a management tool or penalty to foster settlement and prevent delay in all types of litigation." *Sunwest Bank,* 117 N.M. at 378, 872 P.2d at 351. In contrast, "the purpose of Section 56–8–3 is to compensate the plaintiff for damages resulting from loss of use of the funds in cases where money is due by contract, received to the use of another, or due on settlement of matured accounts[.]" *Id.*

{34} Additionally, in *Sunwest Bank,* the bank mistakenly paid a sum of money to the defendant and upon realizing its error sought the return of the money along with prejudgment interest. *Id.* The Supreme Court stated that Section 56–8–3 and not Section 56–8–4(B) applied to the situation. That was because the defendant retained and had the use of the bank's money without its consent and therefore (absent countervailing equities) the bank was entitled to prejudgment interest as a matter of right. *See id.* As the Court has noted,

> [t]he obligation to pay prejudgment interest under Section 56–8–3 arises by operation of law and constitutes an obligation to pay damages to compensate a claimant for the lost opportunity to use money owed the claimant and retained by the obligor between the time the claimant's claim accrues and the time of judgment (the loss of use and earning power of the claimant's funds).

*Id.* at 377, 872 P.2d at 350. Furthermore, *Sunwest* noted that it is the defendant's burden (in this case the City's) to demonstrate a reason for denying prejudgment interest when Section 56–8–3 applies as a matter of right and when the amount of money that is owed can be calculated with reasonable certainty. *See id.* at 378–79, 872 P.2d at 351–52.

{35} The City has not separately argued that there are any countervailing equities that we must consider in determining whether prejudgment interest may be awarded

under Section 56–8–3. The City's position is premised on the argument that Section 56–8–4(D) prohibits an award of prejudgment interest against a political subdivision. However, the cases that the City cites in support of its argument are distinguishable.

{36} In *Gonzales v. New Mexico Educ. Retirement Bd.,* 109 N.M. 592, 595, 788 P.2d 348, 351 (1990), the Supreme Court refused to award prejudgment interest to a plaintiff in a workers' compensation suit. Without explanation, and without reference to Section 56–8–3, the Court stated that prejudgment interest may not be awarded against a state agency. *See id.* Yet, the basis asserted by the worker for awarding prejudgment interest in *Gonzales* was whether the agency unreasonably denied or delayed compensation benefits to the worker—a situation addressed by Section 56–8–4. *See id.* Similarly, in *Montney v. State ex rel. Highway Dep't,* 108 N.M. 326, 331, 772 P.2d 360, 365 (Ct.App. 1989), another suit seeking workers' compensation benefits, we stated that under Section 56–8–4(D), the state and its political subdivisions are exempt from awards of interest on judgments. We have not, however, ruled that political subdivisions or the State are exempt from an award of prejudgment interest under Section 56–8–3.

{37} When reading both statues together, and when considering the separate policies furthered by each, we conclude that an award of prejudgment interest under Section 56–8–3 against a political subdivision is not exempt by the language in Section 56–8–4(D). The language in subsection D applies in those situations when the trial court considers settlement and delay. Thus, we reverse the trial court insofar as that court held that prejudgment interest could not be awarded at all because of Section 56–8–4(D).

{38} Notwithstanding the City's lack of a specific and separate argument on this issue, we believe that our remand for purposes of taking evidence on the equitable factors would permit the court to exercise a certain amount of discretion with regard to the question of interest under Section 56–8–3. Thus, we also remand to the district court to consider whether, assuming the equities favor

Grace and allow it to recoup overpayments, the City can assert a reason for denying prejudgment interest to Grace. *See Sunwest Bank,* 117 N.M. at 378–79, 872 P.2d at 351–52; *see also Shanbour,* 864 P.2d at 816–18 (suggesting that interest in a case like this should run only from the date of discovery of the error or demand for repayment). If the City cannot assert a reason for denying prejudgment interest, the trial court is then instructed to use its discretion to set an appropriate rate of interest.

## CONCLUSION

{39} The trial court's decision that the statute of limitations had expired is affirmed. The summary judgment, however, is reversed. The case is remanded to determine whether Grace may recoup overpayments of royalties, and if so, whether Grace is entitled to prejudgment interest as allowed under Section 56–8–3.

{40}  **IT IS SO ORDERED.**

FLORES and BOSSON, JJ., concur.