2002-NMSC-033

59 P.3d 500

**STATE of New Mexico, ex rel., PUBLIC EMPLOYEES RETIREMENT ASSOCIATION, Plaintiff–Respondent,**

v.

**Lawrence LONGACRE, Defendant–Petitioner.**

**No. 27,135.**

Supreme Court of New Mexico.

Nov. 19, 2002.

George T. Geran, Santa Fe, NM, for Petitioner.

G.T.S. Khalsa, Santa Fe, NM, for Respondent.

## OPINION

KENNEDY, Justice.

{1} Defendant Appellant, Lawrence Longacre (Lawrence), appeals from the decision in *State ex rel. Public Employees Retirement Ass'n v. Longacre*, 2001 NMCA 076, 131 N.M. 156, 33 P.3d 906, in which the Court of Appeals declared NMSA 1978, § 10–11–4.2(A) (1997) unconstitutional. We reverse the Court of Appeals, holding that Section 10–11–4.2(A) is a constitutional statute of repose.

### FACTS AND PROCEDURAL HISTORY

{2} The facts in this case are undisputed. Maria Longacre (Maria) was a member of the Public Employees Retirement Association (PERA). She and Lawrence were married at all material times. On August 1, 1992, Maria applied to PERA for disability retirement pension benefits under form of payment "A." Pension benefits available under form of payment "A" "stop upon the death of the retired member" with certain exceptions not at issue here. NMSA 1978, § 10–11–117(A) (1997). PERA is required to obtain the consent of a member's spouse, if any, "to the election of the form of payment ... before the election ... is effective." NMSA 1978, § 10–11–116(A) (1991).

{3} PERA paid Maria retirement benefits under form of payment "A" commencing on the date of her application, until her death on January 15, 1997. However, PERA failed to obtain Lawrence's consent to Maria's election of benefits during her lifetime. Maria's attempted election of form of payment "A" was therefore rendered ineffective. As a result, Lawrence became eligible by operation of law, as Maria's surviving spouse, for the payment of survivor benefits under form of payment "C." Section 10–11–116(A)(2).

{4} After learning of the omission, Lawrence filed an administrative claim with PERA asserting that he was entitled to receive benefits under form of payment "B."

PERA denied Lawrence's claim, and he appealed PERA's decision to the PERA Board, which held a hearing on the claim on March 30, 1998. During the hearing, PERA claimed that it had overpaid benefits to Maria during her lifetime in an amount equal to the difference between the higher rate of payment of benefits under form of payment "A," which was void, compared to those payable under form of payment "C." These overpayments totaled $7537.90. Further, PERA argued that it was entitled to recoup the entire amount of the overpayments from Lawrence but for Section 10–11–4.2(A), which it claimed unconstitutionally restricted its recovery to one year of overpayments.[1] On October 28, 1998, the PERA Board issued a decision granting Lawrence pension benefits under form of payment "C" and limiting PERA's recovery to only one year of the overpayments it made to Maria.

{5} PERA then filed a complaint for declaratory judgment in district court on November 25, 1998, challenging the constitutionality of Section 10–11–4.2(A) under Article IV, Section 32 of the New Mexico Constitution. The parties filed cross motions for summary judgment. On August 25, 1999, the district court denied PERA's motion for summary judgment and granted Lawrence's cross motion.

{6} PERA appealed to the Court of Appeals, which reversed the district court. Under the Court of Appeals' decision, PERA is entitled to recover from Lawrence the full amount of the overpayments it made to Maria during her lifetime because Section 10–11–4.2(A) is unconstitutional.

## DISCUSSION

{7} The only issue presented on appeal is whether Section 10–11–4.2(A) violates Article IV, Section 32 of the New Mexico Constitution. The statute provides:

> If an error or omission results in an overpayment to a member or beneficiary of a member, the association shall correct the error or omission and adjust all future payments accordingly. The association

shall recover all overpayments made for a period of up to one year prior to the date the error or omission was discovered.

Section 10–11–4.2(A). The Court of Appeals found Section 10–11–4.2(A) unconstitutional based upon its determination that the statute amounts to a legislative "forgiveness of debt," *Longacre*, 2001–NMCA–076, ¶ 25, 131 N.M. 156, 33 P.3d 906, owed to the state, in violation of Article IV, Section 32 of the Constitution of New Mexico, which provides in pertinent part:

> No obligation or liability of any person, association or corporation held or owned by or owing to the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released, postponed or in any way diminished by the legislature, nor shall any such obligation or liability be extinguished except by the payment thereof into the proper treasury, or by proper proceeding in court.

N.M. Const. art. IV, § 32 (as amended 1958).

{8} Specifically, the Court of Appeals stated that "[o]nce an overpayment is discovered, Section 10–11–4.2(A) is applied retroactively to preclude collection of more than one year of overpayments.... Section 10–11–4.2(A) cannot be applied without diminishing an obligation or liability owed to the State and that is why it is in conflict with Article IV, Section 32." *Longacre*, 2001–NMCA–076, ¶ 18, 131 N.M. 156, 33 P.3d 906. The Court of Appeals went on to conclude, we believe unnecessarily given its interpretation of Section 10–11–4.2(A) as stated above, that Article IV, Section 32 must be read to prohibit the legislature's release or diminishment of even those obligations or liabilities not yet incurred when it enacts a statute purporting to release them. *Id.* ¶ 19.

{9} Lawrence counters on appeal that Section 10–11–4.2(A) does not offend Article IV, Section 32 because, he claims, New Mexico case law stands for the proposition that the legislature may prospectively limit a state's

---

1. Section 10–11–4.2(A) was enacted as an emergency measure that took effect on April 6, 1993, the date of its approval. 1993 N.M. Laws, ch. 239; *see* N.M. Const. art. IV, § 23. It is undisputed that PERA had already overpaid Maria $969.76 out of the total amount of overpayments as of that date.

ability to recover an obligation not yet in existence when the statute purporting to extinguish or diminish it is enacted. Thus, he proposes a bright line rule that would prohibit the legislature's release of only those obligations or liabilities fixed as of the date any such statute is enacted. Additionally, he asserts that Section 10–11–4.2(A) falls within the bounds of the constitution given such a rule because Section 10–11–4.2(A) is a statute of repose that only acts prospectively to bar the remedy of recovery rather than to extinguish or diminish an obligation or liability owed the state. While we decline to adopt Lawrence's proposed bright line rule, we reverse the Court of Appeals because we determine that Section 10–11–4.2(A) is a constitutional statute of repose. Additionally, we issue this opinion to constrain what could be construed as an overly broad interpretation of Article IV, Section 32 by the Court of Appeals.

## A. Standard of Review

██ {10} "When there are no disputed material facts, an appellate court reviews all issues on appeal under a de novo standard of review." *City of Albuquerque v. One (1) 1984 White Chevy Ut.*, 2002–NMSC–014, ¶ 5, 132 N.M. 187, 46 P.3d 94. The "presumption is that the Legislature has performed its duty, and kept within the bounds fixed by the Constitution, and the judiciary will, if possible, give effect to the legislative intent unless it clearly appears to be in conflict with the Constitution." *Asplund v. Alarid*, 29 N.M. 129, 131–32, 219 P. 786, 787 (1923); *see also Ortiz v. Taxation & Revenue Dep't*, 1998–NMCA–027, ¶ 5, 124 N.M. 677, 954 P.2d 109. A court must uphold a statute unless satisfied beyond a reasonable doubt that the legislature exceeded the bounds of the constitution in enacting it. *City of Farmington v. Fawcett*, 114 N.M. 537, 540, 843 P.2d 839, 842 (Ct.App.1992).

## B. Scope of Article IV, Section 32

██ {11} This Court has had several occasions to consider the constitutionality of

legislation in light of Article IV, Section 32. In *Board of Education v. McRae*, 29 N.M. 85, 88, 218 P. 346, 347 (1923), this Court held that the repeal of a law under which a poll tax assessment had already been made could not affect liability for such assessment, because such interpretation would run afoul of Article IV, Section 32. Similarly, in *Asplund*, 29 N.M. at 138, 219 P. at 789, we held that a property tax once duly assessed was an obligation or liability as could not be released or amended. In *State v. Montoya*, 32 N.M. 314, 255 P. 634 (1927) we stated:

> We hold only that [the statute at issue], in its purpose and effect, is void, in so far as it attempts to prevent recovery by the state of personal judgments for taxes previously assessed, and therefore possessing the quality of obligations or liabilities of a person, association, or corporation held or owned by the state.

*Id.* at 318, 255 P. at 635; *see also Gutierrez v. Gutierrez*, 99 N.M. 333, 335, 657 P.2d 1182, 1184 (1983) (holding that Article IV, Section 32 prohibits a public hospital "from accepting payment of less than the full amount of an undisputed legal obligation as a satisfaction."). Thus, Article IV, Section 32 clearly prohibits the release or diminishment, by statute or otherwise, of those obligations or liabilities[2] already accrued except "by the payment thereof into the proper treasury, or by proper proceeding in court."

{12} The limit of the general rule set forth above was illustrated in a case decided by the Supreme Court of Montana in *Jones v. Burns*, 138 Mont. 268, 357 P.2d 22 (1960). In *Jones*, the plaintiff brought a declaratory action to determine the constitutionality of a statute providing for reimbursement by the state to utility companies of seventy-five percent of all costs associated with the relocation of their facilities upon public highways whenever the state commission determined such relocation was necessary. *Id.* at 25–26. The plaintiff-appellant contended that the statute authorizing reimbursement violated Montana

---

**2.** We are persuaded by the sound reasoning in the Court of Appeals' decision that the receipt of an overpayment of retirement benefits by a beneficiary would give rise to an "obligation or liabil-

ity" within the meaning of Article IV, Section 32. *Longacre*, 2001–NMCA–076, ¶ 13, 131 N.M. 156, 33 P.3d 906.

Constitution, Article V, Section 39, which states:

> Except as hereinafter provided, no obligation or liability of any person, association or corporation, held or owned by the state, or any municipal corporation therein, shall ever be exchanged, transferred, remitted, released or postponed, or in any way diminished by the legislative assembly; nor shall such liability or obligation be extinguished, except by the payment thereof into the proper treasury.

*Id.* at 35–36.

{13} Initially, the Supreme Court of Montana stated that implicit in the plaintiff-appellant's argument was that utility companies have a common-law duty to relocate their facilities at their own expense, which constitutes an "obligation or liability" within the meaning of the constitutional provision. *Id.* at 36. However, at the time the statute at issue in *Jones* was passed, "[t]he common-law duty of the utility companies arose only when and if the existing facilities interfered with the rearrangement of a highway; it was only a contingent obligation to change the location of their facilities." *Id.* Relying in part on the precedent cited in its opinion[3], the Court concluded that the statute at issue was constitutional because the Montana Constitution applied only to "*fixed and liquidated claims* owed to the state."[4] *Id.* (emphasis added).

{14} Similarly, the Supreme Court of Alabama in *Alabama Education Ass'n v. Grayson*, 382 So.2d 501 (Ala.1980) examined the constitutionality of a statute providing that net operating loss was to be a carryback to each of the three taxable years preceding the taxable year of the loss. The Court held that an Alabama constitutional provision nearly identical to New Mexico's Article IV, Section 32 "has no application to conditional obligations, but proscribes only the release of fixed obligations." *Id.* at 503. As a result, the Court concluded that the statute at issue was constitutional, because, under Alabama law, a tax obligation in Alabama did not become fixed until three years after the filing of the initial return or until it was otherwise finally assessed by the Department of Revenue. *Id.* at 504.

{15} *Jones* and *Alabama Education Ass'n* are in accord with our interpretation of the plain language of Article IV, Section 32, which uses the verbs "owned," "held," and "owing" in the past tense[5] as applied to those obligations or liabilities that the legislature may not release or otherwise diminish. That is, the use of these terms in the past tense clearly indicates an intent that the constitutional provision apply only to fixed, rather than contingent or uncertain, obligations or liabilities owed to the state. Any other interpretation would render these terms of the constitutional provision superfluous. *See Denish v. Johnson*, 1996–NMSC–005, ¶ 37, 121 N.M. 280, 910 P.2d 914 ("[U]nder basic rules of construction, no part of a constitutional provision should be interpreted so that it is rendered meaningless or superfluous.").

{16} Next, Lawrence argues that the New Mexico cases cited above, together with the use of the verbs "owned," "held," and "owing" in the past tense, stand for the proposi-

---

**3.** Specifically, the Court observed that "[c]onstitutional provisions similar to article V, § 39, of the Montana Constitution have been held to apply only to fixed and liquidated claims owed to the state...." *Id.* (citing *Roberts v. Fiscal Court*, 244 Ky. 596, 51 S.W.2d 897 (App.1932); *Cole v. Burton*, 313 Ky. 557, 232 S.W.2d 838 (App.1950); *Adams v. Fragiacomo*, 71 Miss. 417, 15 So. 798 (1893)).

**4.** The Court attempted to bolster its conclusion with an interpretation of the language of the Montana constitutional provision itself. *Id.* ("It is apparent that the 'nor' clause refers to the same obligation or liability discussed at the beginning of the section. It thus becomes apparent that the section as a whole applies only to such obligations or liabilities which are capable of being 'extinguished' by payment into the proper treasury."). We find the logic of this argument unhelpful to our determination of whether a statute must be analyzed in light of Article IV, Section 32 of our constitution from the moment a statute releases or diminishes a fixed obligation or liability, or from the date of its enactment.

**5.** "Although *owing* in the sense of *owed* is an old and established usage, the more logical course is simply to write *owed* where one means *owed*. The active participle may sometimes cause ambiguities, or mislead the reader, if only for a second." Bryan A. Garner, *A Dictionary of Modern Legal Usage* 633 (2d ed.1995).

tion that Article IV, Section 32 only forbids the legislature from releasing obligations and liabilities in existence when a statute purporting to release them is *enacted.* We disagree. As the Court of Appeals recognized below, Article IV, Section 32 provides that no obligation or liability to which the provision applies "shall *ever* be exchanged, transferred, remitted, released, postponed or in any way diminished by the legislature."[6] N.M. Const. art. IV, § 32 (emphasis added); *Longacre,* 2001–NMCA–076, ¶ 19, 131 N.M. 156, 33 P.3d 906.

{17} Although the adverb "ever" does not in any way speak to the attributes of those obligations or liabilities the release of which by the legislature is forbidden by Article IV, Section 32 (*i.e.* those that are "owned," "held," and "owing" to the state), it does modify the phrase "be exchanged, transferred, remitted, released, postponed or in any way diminished by the legislature." N.M. Const. art. IV, § 32. Thus, when the language of Article IV, Section 32 is construed in its entirety, it becomes evident that a given statute must be analyzed in light of Article IV, Section 32 from the moment a fixed liability or obligation may be released or diminished by the statute, rather than from the date of its enactment as Lawrence contends.[7]

{18} Under our interpretation of Article IV, Section 32, clearly the legislature may "eliminate or reduce a tax, as long as it only changes the tax structure prospective-ly." *Longacre,* 2001–NMCA–076, ¶ 16, 131 N.M. 156, 33 P.3d 906. Such a statute would define the nature of a future obligation or liability itself. On the other hand, Article IV, Section 32 would prohibit a statute that has the effect of eliminating or reducing a liability already incurred, even if the liability has not yet been incurred on the date that such statute is enacted.

## C. Constitutionality of Section 10–11–4.2(A)

{19} We must next determine whether Section 10–11–4.2(A) is constitutional viewing its effect as applied to overpayments accruing after the date of its enactment. The parties devote a significant portion of their briefs to a discussion of whether Section 10–11–4.2(A) is a constitutional statute of either limitations or repose. The same issue was raised in *Montoya,* where this Court stated:

We fail to discover in this statute ... the earmarks of an ordinary statute of limitations. A statute which merely bars the remedy is one of repose. It forbids the preferring of stale claims as a matter of public policy. But this statute is one of presumption of payment, and directs the county treasurers to make record of actual payment. It does not act prospectively as statutes of limitations do. It acts only retrospectively. It allows no time within which the state may proceed on these old taxes before the bar is to fall, as statutes

---

6. We note that the Court of Appeals below improperly failed to accord the terms "owned," "held," and "owing" any significance in its construction of the constitutional provision. Rather, the Court paraphrased Article IV, Section 32 to state: " 'No obligation or liability ... shall *ever* be' affected by legislative action." *Longacre,* 2001–NMCA–076, ¶ 19, 131 N.M. 156, 33 P.3d 906 (alteration in original). On that basis, the Court of Appeals decided that Article IV, Section 32 must be read to prohibit the legislature's release or diminishment of even those obligations and liabilities not yet in existence. *Id.* (stating that the term "ever" must be read to signify " 'at all times,' 'at any period or point of time,' and 'through an indefinite time.' ") (quoting *Webster's Third New International Dictionary* 788 (1993)). This construction ignores the use of the verbs "owned," "held" and "owing" in the past tense, and would bestow upon the constitutional provision too broad a sweep.

7. In drawing the distinction between the date of a statute's enactment and its effect on an obligation or liability owed to the state, we do not intend to refer to the difference, if any, between the date of a statute's enactment and its effective date as provided by Article IV, Section 23, of the New Mexico Constitution, which states that:

Laws shall go into effect ninety days after the adjournment of the legislature enacting them, except general appropriation laws, which shall go into effect immediately upon their passage and approval. Any act necessary for the preservation of the public peace, health or safety, shall take effect immediately upon its passage and approval, provided it be passed by two-thirds vote of each house and such necessity be stated in a separate section.

of limitations must do which are to affect private contract obligations. The plain purpose and necessary effect of this section is to remit and release tax obligations. *Montoya*, 32 N.M. at 317, 255 P. at 635. Under the reasoning set forth in *Montoya*, a statute of limitations or repose to be valid under Article IV, Section 32 must, minimally, permit the state some form of recovery against existing obligations or liabilities.

{20} Initially, a "statute of limitations establishes the time, after a cause of action arises, within which a claim must be filed." *Cummings v. X-Ray Assocs.*, 1996–NMSC–035, ¶ 49, 121 N.M. 821, 918 P.2d 1321. "A statute of limitations begins to run when the cause of action accrues, the accrual date usually being the date of discovery." *Id.* "On the other hand, a statute of repose terminates the right to any action after a specific time has elapsed, even though no injury has yet manifested itself." *Id.* ¶ 50. "A statute of repose runs from a statutorily determined triggering event." *Id.* (observing that a patient's claim for medical malpractice will be barred if they fail to discover their injury within three years of the malpractice, even though the injury may be present but undetected). "[T]he purpose of a statute of repose is to put an end to prospective liability for wrongful acts that, after the passage of a period of time, have yet to give rise to a justiciable claim." *Garcia ex rel. Garcia v. La Farge*, 119 N.M. 532, 537, 893 P.2d 428, 433 (1995); *see Duncan v. Campbell*, 1997–NMCA–028, ¶ 15, 123 N.M. 181, 936 P.2d 863 (stating that statutes of repose serve purpose of promoting fairness to prospective defendants). Moreover, statutes of limitation or repose may run against the state where the statute expressly includes the state or does so by clear implication. *See Bd. of Educ. v. Standhardt*, 80 N.M. 543, 549, 458 P.2d 795, 801 (1969); *see also State v. Estate of Crocker*, 38 Ala.App. 306, 83 So.2d 261, 263–64 (1955) (holding that constitutional provision similar to that of New Mexico prevented extinguishment of claim held by state against decedent's estate for "old age" benefits illegally claimed during decedent's lifetime, but *not* to affect power of legislature to provide six-month period of limitation on recovery thereof by state in the interest of repose).[8]

{21} In deciding that Section 10–11–4.2(A) is not such a statute, the Court of Appeals stated:

Section 10–11–4.2(A) ... does not ground its time prior to repose on the most logical event; that is, at retirement when the error in option selection occurs and PERA's claims become justiciable. Instead it counts backward from date the error is discovered. Lawrence thus proposes a statute of repose which is triggered and measured by discovery of the claim by PERA.

*Longacre*, 2001–NMCA–076, ¶ 24, 131 N.M. 156, 33 P.3d 906. The court concluded that Section 10–11–4.2(A) must be interpreted as a "forgiveness of debt rather than a statute of limitations of any kind." *Id.* ¶ 25. We agree Section 10–11–4.2(A) does not look like a typical statute of repose; we disagree with the Court of Appeals' interpretation of the statute.[9]

{22} Section 10–11–4.2(A) is not triggered by PERA's discovery of the error causing

---

8. In *Estate of Crocker*, the Court of Appeals of Alabama noted the policy served by the statute of limitation " 'to facilitate the administration of estates and to permit them to be settled and disposed of without delay.' " *Id.* at 264 (quoting *Div. of Aid for the Aged v. Wargo*, 73 N.E.2d 701, 702 (Ohio Ct.App.1947)). In the case at bar, a statute of limitations or repose providing that the state may not recover overpaid retirement benefits after the expiration of a certain time period serves the purpose of facilitating effective financial planning by retirees who are often forced to make, for example, critical healthcare decisions based upon the availability of fixed and often limited resources.

9. We also agree with the implicit holding of the Court of Appeals that PERA may recover the overpayments it made prior to the enactment of the statute, which cannot act to bar the recovery of those overpayments. *See Coleman v. United Eng'rs & Constructors, Inc.*, 118 N.M. 47, 52, 878 P.2d 996, 1001 (1994) (observing that New Mexico law presumes a statute to operate prospectively unless there is a clear intention expressed by the legislature to give it retroactive effect.) Judge Robinson, in his dissent, also agreed on this point. *See Longacre*, 2001–NMCA–076, ¶ 36, 131 N.M. 156, 33 P.3d 906 (Robinson, J., dissenting).

any overpayments. It is triggered, or begins to run, upon the making of an overpayment itself. Likewise, Section 10–11–4.2(A) does not act retroactively upon the discovery of the error or omission causing the overpayment to release an obligation or liability owed to the state, but rather, like an ordinary statute of repose, merely bars the right to recover on such obligations or liabilities with the passage of time. For example, if PERA were to make an overpayment of retirement benefits on January 1, 2003, it would be barred under Section 10–11–4.2(A) from collecting the overpayment after December 31, 2003 as long as it had *not* yet discovered its error by that date. In this sense, Section 10–11–4.2(A) is virtually indistinguishable from the typical statute of repose. *See, e.g.,* NMSA 1978, § 41–5–13 (1976) (claim for malpractice must be filed within three years of act of malpractice irrespective of whether injury had ever been discovered).

{23} PERA acknowledges that under an ordinary statute of limitations or repose it would have a pre-determined period of time within which to bring a cause of action for overpayments, but seeks to distinguish Section 10–11–4.2(A) from such a statute on the ground that Section 10–11–4.2(A) acts instead to diminish the debt owed. However, a statute of repose may very well act to prevent a party from recovering the total amount of an obligation or liability owed, without completely eliminating the right to recovery, where, as here, there is a "continuing wrong." *See Plaatje v. Plaatje,* 95 N.M. 789, 790–91, 626 P.2d 1286, 1287–88 (1981) (holding that payment of monthly retirement benefits in action to recover portion thereof by spouse subsequent to divorce was governed by four-year statute of limitation commencing from date each payment comes due); *Tull v. City of Albuquerque,* 120 N.M. 829, 830–31, 907 P.2d 1010, 1011–12 (Ct.App. 1995) (noting application of "continuing wrong" theory in cases involving contracts

requiring periodic payments). The critical issue in light of Article IV, Section 32 is not whether Section 10–11–4.2(A) may, through its application as a statute of repose, eventually bar the state from collecting on an obligation or liability owed it by the passage of time, but whether it has the absolute effect of altering or extinguishing an obligation, with no opportunity for the state to enforce it.

{24} We note that Section 10–11–4.2(A) would violate Article IV, Section 32 if it did actually extinguish an obligation. However, Section 10–11–4.2(A) does not go so far, even though the statute's effect at the moment it bars the remedy of recovery on the obligation is necessarily retroactive. *See Britton v. Britton,* 100 N.M. 424, 428, 671 P.2d 1135, 1139 (1983) ("Application of a statute of limitations merely bars the remedy on a stale claim without determining the underlying validity of that claim or modifying it in any way."). The statute does allow the state to fully recover overpayments, if they are discovered in time. Thus, the prohibitions of Article IV, Section 32 are not triggered by the statute. Lawrence does, however, remain obligated to repay "all overpayments made for a period of up to one year prior to the date the error or omission [causing the overpayments] was discovered." [10] Section 10–11–4.2(A).

{25} PERA also argues that, under a "typical" statute of limitations, an action for relief on the grounds of mistake, *i.e.* an error or omission resulting in an overpayment, "would not be deemed to have accrued until the mistake was discovered by the aggrieved party." However, a statute of repose may bar an action without regard to whether a mistake causing injury is discovered. *See* § 41–5–13. Additionally, one party's mistake does not toll a statute of limitations. *City of Carlsbad v. Grace,* 1998–NMCA–144, 126 N.M. 95, 966 P.2d 1178. In *City of Carlsbad,* Grace, an oil company, claimed a right to recoup overpayments of royalties it made to the City as a result of its own accounting

---

**10.** It does not appear from our review of the record before us that the PERA Board determined the date on which the error causing overpayment to Lawrence was discovered. Additionally, it is unclear whether the Board's order allowed PERA to recover any amounts overpaid

prior to the enactment of Section 10–11–4.2(A), which it may recover under our holding. *See infra* note 9. However, these issues were not before the district court, because neither PERA nor Lawrence appealed from the PERA Board's order.

error. *Id.* ¶ 2. In holding that the applicable statute of limitations was not tolled until Grace's discovery of the error resulting in the overpayment, the Court of Appeals stated:

> [I]t was Grace's responsibility to ensure that it correctly remitted payments to the City. For sixteen years Grace failed to discover its error. Furthermore, as conceded during oral argument by Grace's counsel, the error was discoverable. If Grace had examined its accounting records during the sixteen-year period, Grace could have discovered the miscalculation.

*Id.* ¶ 7.

{26} Likewise, in this case, although there are no facts before this Court from which we will infer that PERA made a unilateral mistake resulting in overpayments to Maria during her lifetime, we note that the Public Employees Retirement Act places an affirmative burden on PERA to obtain the consent of a member's spouse to the election of the form of payment before the election is effective. Section 10–11–116(A) ("If the member is married, *the association shall* obtain the consent of the member's spouse to the election of the form of payment ... before the designation is effective.") (emphasis added). Moreover, PERA, not the individual retirement beneficiary, is in a position to conduct regular audits for the purpose of correcting any errors or omissions before they result in substantial overpayments of retirement benefits. Thus, we are not persuaded that the legislature's decision to specifically provide that a cause of action for the recovery of overpaid retirement benefits begins to accrue against PERA upon its making of an overpayment, rather than upon the discovery of the error causing the overpayment, is contrary to well-established precedent or prohibited by our constitution.

## CONCLUSION

{27} Finally, we observe that the policies evident from the plain language of Section 10–11–4.2(A) are well furthered by the statute. Specifically, Section 10–11–4.2(A) acts to: (1) reduce the potential hardship to retirement pension beneficiaries from having to return overpayments that may have long ago been spent; and (2) provide a strong incentive to PERA to conduct regular audits for the purpose of correcting any errors or omissions before they result in substantial overpayments of retirement pension benefits. It is not our function to question the wisdom of these policies as expressed by the legislature, and we will not do so. The statute is constitutional, because it acts merely to bar the remedy of recovery of overpayments made to retirement pension beneficiaries upon the expiration of one year from the date of each overpayment. The statute is not intended to, nor does it have the effect of, releasing obligations or liabilities "held or owned by or owing to the state."

{28} We hold that Section 10–11–4.2(A) is a constitutional exercise of the legislature's power to enact a statute of repose made specifically applicable to the state or its agencies. We therefore reverse the Court of Appeals, and remand to the district court for proceedings consistent with this opinion.

{29} **IT IS SO ORDERED.**

WE CONCUR: PATRICIO M. SERNA, Chief Justice, GENE E. FRANCHINI, PAMELA B. MINZNER, and PETRA JIMENEZ MAES, Justices.